UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

TERRA FIRMA INVESTMENTS (GP) 2 LIMITED, :
and TERRA FIRMA INVESTMENTS (GP) 3 :
LIMITED, :
                                :     Case No. 09 CIV 10459
                 Plaintiffs,     :     (JSR) (AJP)
                                  :     ECF Case
       -against-             : 
                                  : 
CITIGROUP INC., CITIBANK, N.A., CITIGROUP :
GLOBAL MARKETS LIMITED and CITIGROUP :
GLOBAL MARKETS INC., :
                 Defendants.    :

---------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(3) PURSUANT TO MANDATORY FORUM SELECTION CLAUSES AND FOR *FORUM NON CONVENIENS*

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

Brad S. Karp, Esq.
Theodore V. Wells, Jr., Esq.
Jay Cohen, Esq.
John F. Baughman, Esq.

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants Citigroup Inc., Citibank,*
*N.A., Citigroup Global Markets Limited, and*
*Citigroup Global Markets Inc.*

# Table of Contents

**Page**

Table of Authorities .................................................................................................................iii

Preliminary Statement ............................................................................................................. 1

Statement of Facts .................................................................................................................... 4

    A.  Terra Firma Makes an Offer To Purchase EMI ............................................................ 4

    B.  CGML and Citibank, N.A., London Branch, Finance Terra Firma's Purchase of EMI ....................................................................................................................................... 6

    C.  England Is the Location of Virtually All Relevant Events ............................................. 7

    D.  The Forum Selection Clauses Provide for Exclusive Jurisdiction in the Courts of England and for the Application of English Law ........................................................... 8

Argument .................................................................................................................................. 9

I.  THIS ACTION SHOULD BE DISMISSED PURSUANT TO THE FORUM SELECTION CLAUSES GOVERNING TERRA FIRMA'S CLAIMS ............................... 10

    A.  Terra Firma's Claims Relating to Alleged Misrepresentations Made During the Auction Must Be Litigated in England ......................................................................... 12

    B.  Terra Firma's Claim Regarding Citi's Performance Under the Finance Agreements Must Also Be Litigated in England ............................................................ 14

II.  THIS ACTION SHOULD BE DISMISSED ON THE GROUND OF *FORUM NON CONVENIENS* ................................................................................................................. 17

    A.  Terra Firma's Choice of Forum Is Entitled to Little or No Deference ......................... 19

    B.  The Courts of England Are an Available and Adequate Alternate Forum ...................... 20

    C.  The Balance of Public and Private Interests Weighs in Favor of Litigation in England ........................................................................................................................ 21

**Page**

    1.    The Public Interest Factors Favor Litigation in England ............................................. 21

    2.    The Private Interest Factors Favor Litigation in England ........................................... 23

Conclusion ...................................................................................................................... 25

**Page(s)**

**CASES**

*Aguas Lenders Recovery Group v. Suez, S.A.*,
    585 F.3d 696, 697 n.1, 701 (2d Cir. 2009) ................................................................4, 16

*Aguinda v. Texaco*,
    142 F. Supp. 2d 534, 537 (S.D.N.Y. 2001) (Rakoff, J.), *aff'd as modified*,
    303 F.3d 470 (2d Cir. 2002)................................................................................................18

*Base Metal Trading SA v. Russian Aluminum*,
    253 F. Supp. 2d 681, 696-97 (S.D.N.Y. 2003), *aff'd*, 98 Fed. Appx. 47
    (2d Cir. 2004)........................................................................................................................19

*Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*,
    No. 09 Civ. 7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) .........................13

*BNY AIS Nominees Ltd. v. Quan*,
    609 F. Supp. 2d 269, 275-76 (D. Conn. 2009)..................................................................17

*CFirstclass Corp. v. Silverjet PLC*,
    560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) ......................................................................13

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
    241 F.3d 123, 128 (2d Cir. 2001) .......................................................................................16

*Corporacion Tim, S.A. v. Schumacher*,
    418 F. Supp. 2d 529, 534, 536 (S.D.N.Y. 2006), *aff'd*, 223 Fed. Appx. 37
    (2d Cir. 2007) ..............................................................................................................18, 22

*Cuno, Inc. v. Hayward Indus. Prods., Inc.*,
    No 03 Civ. 3076, 2005 WL 1123877, at *1 n.1, *6 (S.D.N.Y.
    May 10, 2005) ......................................................................................................... 1, 16, 17

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,
    No. 07 Civ. 9580, 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008)............................16

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*,
    145 F.3d 505, 511 (2d Cir. 1998), *remanded to* 41 F. Supp. 2d 447, 452
    (S.D.N.Y. 1999) (Rakoff, J.)...................................................................... 19, 20, 22, 23

*Gilstrap v. Radianz Ltd.*,
    443 F. Supp. 2d 474, 476, 481, 487, 488 (S.D.N.Y. 2006), *aff'd*, 233 Fed.
    Appx. 83 (2d Cir. 2007)............................................................................... 18, 21, 23, 24

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501, 508 (1947)................................................................. 18, 21, 23

*J.B. Harris, Inc. v. Razei Bar Indus. Ltd.,*
  37 F. Supp. 2d 186, 191-92 (E.D.N.Y. 1998), *aff'd*, 181 F.3d 82
  (2d Cir. 1999)...................................................................................13

*M/S Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1, 15 (1972)........................................................................10

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.,*
  46 F. Supp. 2d 249, 253 (S.D.N.Y. 1999) (Rakoff, J.).............................21, 24

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,*
  No 02 Civ. 0767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) ...........16

*Phillips v. Audio Active Ltd.,*
  494 F.3d 378, 383 (2d Cir. 2007).........................................................10

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235, 241 n.6, 260 (1981) .......................................................21, 23

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
  329 F.3d 64, 70, 71, 75, 76 (2d Cir. 2003) ..........................................*passim*

*Roby v. Corp. of Lloyd's,*
  996 F.2d 1353, 1361, 1362-63 (2d Cir. 1993) ......................................10, 13

*Russbeer Int'l LLC v. OAO Baltika Brewing Co.,*
  No. 07-CV-1212, 2008 WL 905044, at *5 (E.D.N.Y. Mar. 31, 2008) ...........16

*Saab v. Citibank, N.A.,*
  No. 00 Civ. 6784 (BSJ), 2001 WL 1382577, at *5
  (S.D.N.Y. Nov. 7, 2001).....................................................................22

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000,*
  499 F. Supp. 2d 437, 444 (S.D.N.Y. 2007), *aff'd sub nom. Geier v.*
  *Omniglow Corp.*, 2009 WL 4893668 (2d Cir. Dec. 21, 2009) (slip op.) .........20

*Universal Grading Serv. v. eBay, Inc.,*
  No. 08-CV-3557, 2009 WL 2029796, at *14, *16 (E.D.N.Y.
  June 10, 2009)...............................................................................13, 17

*Varnelo v. Eastwind Transp. Ltd.,*
  No. 02 Civ. 2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb. 3, 2003).............22

**Page(s)**

## RULES

Fed. R. Civ. P. 12(b)(3)..................................................................................................1

## OTHER AUTHORITIES

The City Code on Takeovers and Mergers...............................................................4, 5

Defendants Citigroup Inc., Citibank, N.A., Citigroup Global Markets Limited, and Citigroup Global Markets Inc. (collectively, "Citi") respectfully submit this memorandum in support of their motion to dismiss the Complaint pursuant to mandatory forum selection clauses requiring suit in the courts of England,[1] and on the ground of *forum non conveniens*.

## Preliminary Statement

This case belongs in the courts of England. Plaintiffs are Terra Firma Investments (GP) 2 Limited and Terra Firma Investments (GP) 3 Limited (collectively, "Terra Firma"), two Channel Island investment funds managed by an English company, with offices in London. Terra Firma asserts that it was misled into bidding in an auction conducted in London, under English takeover rules, to purchase the English-listed company EMI Group plc ("EMI"), by London-based bankers of Citi, which acted both as EMI's financial advisor and as lender to Terra Firma in providing financing for its successful bid. Consistent with the English locus of these transactions, Terra Firma pledged – in a series of agreements with or for the benefit of Citi – that the courts of England would be the appropriate and exclusive forum for the resolution of any disputes relating to information that Terra Firma relied upon in bidding for EMI as well as any claim connected to the financing of its bid. And yet, in contravention of both the terms of the mandatory forum selection clauses and the principles underlying the doctrine of *forum non conveniens*, Terra Firma filed suit in New York instead of the mandatory and more convenient English forum.

This case should be dismissed on either of two independent grounds.

---

[1] A motion to enforce a forum selection clause does not fall under one particular provision of Fed. R. Civ. P. 12(b). *See Cuno, Inc. v. Hayward Indus. Prods., Inc.*, No 03 Civ. 3076, 2005 WL 1123877, at *1 n.1. (S.D.N.Y. May 10, 2005). Courts, however, have deemed Rule 12(b)(3) an appropriate vehicle for such a motion. *See id.*

*First*, a series of agreements specifying that the claims asserted by Terra Firma be resolved in the courts of England requires dismissal of this Complaint. Upon entering the bidding process for EMI, Terra Firma executed an agreement relating to the conditions under which information would be supplied to Terra Firma by EMI and its advisers, including Citi (the "Project Mulberry Agreement" or the "Agreement"). The Project Mulberry Agreement spelled out the obligations of the parties and their advisers with respect to information that Terra Firma might rely on in formulating its bid as well as the limits on liability that might result from providing such information. Critically for this motion, the Agreement contained a broad mandatory forum selection clause providing that any dispute concerning either the Agreement or "the relationship" between Terra Firma and its advisors, on the one hand, and EMI and its advisors, on the other, would be decided under English law and brought exclusively in an English forum. Terra Firma's central claim – that Citi, in its capacity as financial advisor to EMI, wrongly induced Terra Firma to bid for EMI by providing false or misleading information – falls squarely within the claims that the parties expressly agreed to litigate in England.

Terra Firma's remaining claim for tortious interference with prospective business advantage – which Plaintiffs assert arises out of Citi's role as lender to Terra Firma and purported publication of information designated as confidential by the loan agreements – falls within the broad mandatory jurisdiction clauses set out in the loan and related financing agreements entered into between Citi and the acquisition vehicle Terra Firma established to complete the EMI transaction. Each of the agreements that implemented those financing arrangements (the "Finance Agreements") required the parties to submit to the exclusive jurisdiction of the courts of England "any dispute arising out of or in connection with" the

Finance Agreements. The tortious interference claim Terra Firma pleads both arises out of and is in connection with the Finance Agreements.

*Second*, New York is an inconvenient forum. This case, as pleaded, indisputably arises out of acts that overwhelmingly took place in London. The crux of the case relates to Terra Firma's bid in an auction conducted in England, under the "City Code" – the established rules and procedures governing public takeovers in London – to purchase EMI, a UK publicly-listed company headquartered in London. The alleged misstatement on which the case turns was made in London, by a London-based banker working for one of Citi's UK entities. Virtually all of the financing negotiations between Terra Firma and Citi took place in London, the resulting agreements were executed in London, and are governed by English law. And, as Citi's declarations show with specificity, all of the critical party witnesses for both Terra Firma and Citi are based in London, as are many of the non-party witnesses – including former EMI executives – from whom testimony will need to be taken and documents obtained to test Terra Firma's claim that it was misled into bidding for EMI. Under well-settled principles of *forum non conveniens*, the Court should exercise its discretion to dismiss in favor of an English forum. Although Terra Firma, a stranger to this forum, chose to bring its case in this Court rather than in England, its choice is entitled to little or no weight when the motivation appears to be forum shopping. There is no reason to tax the resources of this Court in adjudicating a complex dispute about an English transaction that can and should be resolved by an English court.

## A.      Terra Firma Makes an Offer To Purchase EMI

This matter arises out of Terra Firma's purchase of EMI in May 2007. EMI, an English company with its principal place of business in London, was, until that acquisition, a publicly-traded company listed on the London Stock Exchange. (Smith Decl. ¶ 5.) In the spring of 2007, EMI marketed itself to potential private equity buyers through an auction conducted in accordance with the City Code on Takeovers and Mergers ("City Code"), an established set of rules and procedures governing English takeover transactions. (Compl. ¶ 94; Smith Decl. ¶ 3.) Defendant Citigroup Global Markets Limited ("CGML"), a company organized under the laws of England with its principal place of business in London (Compl. ¶ 24), acted as one of several advisors to EMI in the auction process. (Smith Decl. ¶ 11.) Greenhill & Co. International LLP ("Greenhill"), an investment banking firm with offices in Berkeley Square in London, ran the auction for EMI. Greenhill also acted as EMI's so-called "Rule 3 Advisor" – an independent advisor to the board – under the City Code. (Compl. ¶ 62; Smith Decl. ¶ 12.)

On May 9, 2007, in connection with Terra Firma's bid for EMI, Terra Firma entered into the Project Mulberry Agreement, which governed the flow of information, how such information could be relied upon, and whether and how liability could arise as a result of information provided. (Smith Decl. Ex. 2 ¶¶ 10, 11.) The agreement covers not only EMI and Terra Firma, but also "Connected Persons," a term defined to include EMI's and Terra Firma's "advisers, agents and representatives," as well as Terra Firma's financiers and their advisors.

---

[2] The facts set forth in the accompanying declarations of Matthew Smith ("Smith Decl."), Paul Simpkin ("Simpkin Decl."), and Ian Cockerill ("Cockerill Decl.") may properly be considered in support of this motion to dismiss pursuant to mandatory forum selection clauses and on the ground of *forum non conveniens*. *See, e.g.*, *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009).

(*Id.*, definition (e).)  At that time, "Citi was one of three outside advisors . . . who managed the process by which EMI sought to sell itself to private equity groups" (Compl. ¶ 64), and was thus a Connected Person expressly covered by the Project Mulberry Agreement.

According to the Complaint, "[o]n May 21, 2007, Plaintiffs, the Terra Firma general partners, agreed to submit a bid, at £ 2.65 per share," and proceeded to make an offer at that price pursuant to and in accordance with Rule 2.5 of the City Code.  (Compl. ¶¶ 134, 136.)  EMI accepted the offer that same day.  (*Id.* ¶ 144.)  Terra Firma created Maltby, Ltd. and a number of related entities (collectively, "Maltby") for the express purpose of making the acquisition.  (*Id.* ¶ 120.)

Terra Firma alleges that, prior to making its bid, Citi made false representations to Terra Firma about the auction.  (Compl. ¶¶ 128-131.)  Specifically, Terra Firma alleges that on the evening before the auction closed, the head of CGML's M&A team for Project Mulberry,

> repeated [to Terra Firma] that there was another bidder in the auction for EMI; that the other bidder would bid on Monday morning at £ 2.62 per share; that a bid of £ 2.65 per share by Terra Firma would ensure that EMI's Board recommended Terra Firma's offer to EMI's shareholders; and that a failure by Terra Firma to provide a bid by Monday, May 21, 2007 at 9:00 AM at or above £ 2.62 would ensure that Terra Firma would lose the EMI auction to the other bidder.

(*Id.* ¶ 129.)  Terra Firma alleges that these representations were knowingly false because the other bidder (Cerberus) had withdrawn from the auction, and that "[t]hrough this conduct, Citi intended to induce Terra Firma to submit a binding bid for EMI at a price in excess of £ 2.62 per share, with the consequence that the bid would succeed and that Terra Firma would have no alternative but to rely on Citi's financing for the Acquisition."  (*Id.* ¶¶ 130, 131, 137.)  The Complaint alleges that the fees Citi would earn in providing the financing provided the motivation for falsely inducing Terra Firma to bid.  (*Id.* ¶¶ 125, 142.)  Based on this alleged

conduct, Terra Firma asserts three causes of action "in connection with Plaintiffs' purchase of EMI": fraudulent misrepresentation (Count I, *id.* ¶ 169); negligent misrepresentation (Count II, *id.* ¶ 176); and fraudulent concealment (Count III, *id.* ¶ 183).

**B.    CGML and Citibank, N.A., London Branch, Finance Terra Firma's Purchase of EMI**

On August 13, 2007, CGML and Citibank, N.A., London Branch, entered into three financing arrangements with Terra Firma's acquisition vehicle, Maltby, to close the acquisition of EMI, under which Citibank, N.A., London Branch, issued the debt and CGML acted as the arranger of the debt.[3]  (Simpkin Decl. ¶ 3.)  Today, these Finance Agreements are managed by the London office of the Institutional Recovery Management ("IRM") division of Citibank, N.A.  (Cockerill Decl ¶ 3.)  The Maltby executive who signed the Senior facilities agreement, Francois van der Spuy, held himself out as – and in fact was – a Terra Firma representative.  (Simpkin Decl. ¶ 11.)  Andrew Chadd, the sole Maltby representative in regular contact with the Citi team responsible for managing the debt today, and the sole Maltby Director, maintains a Terra Firma email address, phone number and business card.  (Cockerill Decl. ¶ 12 & Exs. 1, 3.)

Terra Firma alleges that, in its performance under Finance Agreements, Citi tortiously interfered with Terra Firma's "prospective economic advantage." (Compl. Count IV.) Terra Firma claims that Citi violated the Finance Agreements by, for example, withholding its cooperation in implementing a security package and violating its "confidentiality obligations

---

[3]    The Finance Agreements have been amended twice, on December 21, 2007, and again on January 28, 2008.  Relevant excerpts of these three agreements, the "£1,175,000,000 Senior facilities agreement," the "£1,410,000,000 Securitisation bridge facility agreement," and the "£155,000,000 Mezzanine facility agreement," are attached to the accompanying Simpkin Declaration as Exhibits 4, 6, and 7.  Confidential financial information, not relevant to the issues presented in this motion, has been redacted from certain exhibits.

under its loan agreements." (*Id.* ¶¶ 152, 157.) The Complaint alleges that Citi violated confidentiality when it published a purportedly damaging analyst report using information that had been provided to Citi pursuant to the Finance Agreements. (*Id.* ¶ 155.) More generally, Terra Firma alleges that, in managing the debt issued under the Finance Agreements, Citi has failed to act as a "normal lender" and has "interfered with Plaintiffs' business relationship with EMI through unfair and improper means, including but not limited to extreme and unfair economic coercion." (*Id.* ¶¶ 150, 195.)

## C.  England Is the Location of Virtually All Relevant Events

Terra Firma's purchase of EMI was a London-based transaction. The relevant EMI executives lived and worked in London. (Smith Decl. ¶ 6.) CGML's M&A team lived and worked in London. (*Id.* ¶ 3.) The Terra Firma representatives who were in contact with CGML during the bidding process – Guy Hands, then the CEO of Terra Firma, and Tim Pryce, the General Counsel – are believed to have worked in London. (*Id.* ¶ 9.) Other advisors to EMI and Terra Firma also operated out of London. (*Id.* ¶¶ 11-14.) The "Project Mulberry Working Party List," published by EMI's advisor Greenhill, lists teams from EMI, Greenhill, Citi, and Deutsche Bank, in addition to the law firm Freshfields, accounting firms Deloitte, Ernst & Young and KPMG, and a communications firm, Brunswick Group. Nearly all of the people listed on these various advisory teams have London addresses and telephone numbers. (*Id.* ¶12 & Ex. 4.) Meetings and phone calls about Terra Firma's potential acquisition were held and made in London, agreements were signed in London, e-mails were sent to and from London desks, and documents were maintained in London. (Smith Decl. ¶ 4.)

As with Terra Firma's purchase of EMI, the financing of that acquisition also revolved around transactions that took place in London. The Terra Firma representatives involved are London-based. (Simpkin Decl. ¶ 10.) The defendants involved in negotiations

were CGML and Citibank, N.A., London Branch, both based in London, along with non-party Citibank International plc, also a London-based entity. (*Id.* ¶ 3.) Negotiations were conducted almost entirely in London, and the parties were advised by firms and individuals located in London. (*Id.* ¶¶ 10, 14-16.) To this day, continuing issues regarding the debt are handled by the London office of IRM, and the vast majority of the meetings between IRM and Terra Firma regarding that continuing management have occurred in London. (Cockerill Decl. ¶ 8.)

**D.      The Forum Selection Clauses Provide for Exclusive Jurisdiction in the Courts of England and for the Application of English Law**

The Project Mulberry Agreement and each of the Finance Agreements contain forum selection clauses providing for exclusive jurisdiction in the courts of England, and for the application of English law. The Project Mulberry Agreement provides:

> This letter and the relationship between the parties shall be governed by, and construed in accordance with, English law, and we each irrevocably submit to the exclusive jurisdiction of the English courts.

(Smith Decl. Ex. 2 ¶ 30.) This clause applies to Terra Firma, EMI, and, pursuant to paragraph 27, to "Connected Persons" including CGML. Paragraph 27 provides, in relevant part:

> Each of our respective Connected Persons shall have the right under the Contracts (Rights of Third Parties) Act 1999 to enforce the terms of this letter (as it may be amended from time to time), subject to and in accordance with:
>
> (a)      the terms of paragraph 30 (Governing Law and Jurisdiction) . . . .

(Smith Decl. Ex. 2 ¶ 27.)

The Finance Agreements also each designate the courts of England as having exclusive jurisdiction. For example, the Senior facilities agreement provides, in relevant part:

> (a)      The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement

> (including a dispute regarding the existence, validity or termination of this Agreement) (a "Dispute").
>
> (b)　　The Parties agree that the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no Party will argue to the contrary.

(Simpkin Decl. Ex. 4 ¶ 43.1.)　The substance of this clause is repeated in each of the other Finance Agreements. (*Id.* Ex. 5.)　Separately, each of the Finance Agreements provide that "[t]his Agreement is governed by English law." (*Id.* Ex. 4 ¶ 42, Ex. 6 ¶ 39, & Ex. 7 ¶ 39.)

The Finance Agreements are signed by Maltby on the one hand and by one or more of defendant CGML, the London Branch of defendant Citibank, N.A., and non-party Citibank International plc (an English company operating out of London) on the other hand. (Simpkin Decl. Exs. 4, 6, & 7.)　It is clear, however, that Terra Firma treats Maltby's role in the financing of the acquisition as inseparable from Terra Firma's role, such that Terra Firma and Maltby are functional equivalents.　Terra Firma alleges that "Terra Firma purchased EMI," and that Maltby was "the acquisition vehicle on behalf of Terra Firma." (Compl. ¶¶ 1, 120.)　Terra Firma further pleads that it was Terra Firma that sought the financing, that Citi was the "sole financier to Terra Firma" and "the sole lender to Terra Firma in its purchase of EMI," that Terra Firma itself was the entity that agreed to the terms of the Financing Agreements, and that Terra Firma was injured due to the "debt it incurred." (*Id.* ¶¶ 1, 2, 124, 149, 158.)　Similarly, according to the Complaint, "Terra Firma/Maltby" attempted to renegotiate the debt with Citi, but Citi put pressure "on Terra Firma/Maltby." (*Id.* ¶ 152, 154.)

## Argument

Under controlling Second Circuit law, this action should be dismissed.　Several mandatory forum clauses, binding on Terra Firma and covering Terra Firma's claims, require

suit in the courts of England.  But even if Terra Firma was not contractually bound to litigate its claims in England, this case should be dismissed on the ground of *forum non conveniens*.

## I.
### THIS ACTION SHOULD BE DISMISSED PURSUANT TO THE FORUM SELECTION CLAUSES GOVERNING TERRA FIRMA'S CLAIMS

Forum selection clauses are presumptively enforceable.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993).  A four-factor analysis applies to the question of whether a forum selection clause requires dismissal of a suit brought in the wrong forum.  If the clause (1) was communicated to the party resisting enforcement; (2) is mandatory rather than permissive; and (3) covers the claims and parties involved in the suit, the clause is presumptively enforceable.  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  The resisting party can rebut that presumption by (4) "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  Steps one and four of this analysis are conducted under federal law, while the law "chosen to govern the interpretation of the contract as a whole" – in this case, English law – applies to steps two and three, which call for interpretation of the forum selection clause.  *Phillips*, 494 F.3d at 385-86.  These factors undisputedly favor enforcement of the forum selection provisions and dismissal.

*First*, the forum selection clauses were adequately communicated to Terra Firma.  Terra Firma is a signatory to the Project Mulberry Agreement (Smith Decl. Ex. 2) and its Complaint repeatedly states that the Finance Agreements were negotiated between Citi and Terra Firma, or "Terra Firma/Maltby."  (*See, e.g.*, Compl. ¶¶  1, 124, 148, 149, 152.)

*Second*, the forum selection clauses are mandatory, providing that the courts of England shall have "exclusive jurisdiction" over covered claims. (*See* Smith Decl. Ex. 2 ¶ 30; Simpkin Decl. Ex. 4 ¶ 43.1.)

*Finally*, there is no allegation that Terra Firma agreed to resolve disputes in an English forum as a result of fraud or overreaching. Nor can Terra Firma claim any unfairness having to litigate in an English court claims arising from an auction conducted by London-based bankers for an English public company culminating in an acquisition financed through an English bank branch.

There also can be no serious dispute that the forum selection clauses cover the claims and the parties. The Project Mulberry Agreement specifically governed the exchange of information between, among others, CGML and Terra Firma and provided for limitations on liability resulting from any such exchange of information. The Agreement requires Terra Firma to litigate in England disputes regarding "[t]his letter and the relationship between the parties." (Smith Decl. Ex. 2 ¶ 30.) Thus, Counts I, II, and III, each alleging that Citi made misrepresentations to Terra Firma during the course of the auction, are covered by the forum selection clause contained in the Project Mulberry Agreement.

The Finance Agreements cover Count IV, in which Plaintiffs allege both that Citi has, under those Finance Agreements, sought to injure Terra Firma, and that Citi violated specific provisions of those agreements. Having predicated its claim on the terms and operation of agreements between Citi and Terra Firma's acquisition vehicle Maltby, and thus having sought to benefit from those agreements, Terra Firma cannot escape the obligation to litigate in England claims arising "in connection with" the Finance Agreements. Because the forum

selection clauses cover both Terra Firma's claims and the parties to this suit, those clauses should be enforced.

**A.     Terra Firma's Claims Relating to Alleged Misrepresentations Made During the Auction Must Be Litigated in England**

The Project Mulberry Agreement is clear on its face that the claims brought by Terra Firma are covered by the mandatory forum selection clause. That Agreement sets forth the terms under which Citi, as advisor to EMI, shared information with Terra Firma in connection with its bid for EMI, and addresses issues concerning the "accuracy, reliability or completeness of any of the Information" shared. (Smith Decl. Ex. 2 ¶ 10.) The liability of any party who provides misinformation, or fails to correct inaccurate information, is also specifically addressed. (*Id.* ¶¶ 10, 11.) And the Project Mulberry Agreement expressly grants Connected Persons, such as CGML, the right to enforce the terms of the Agreement, including, explicitly, the forum selection clause. (*Id.* ¶ 27.) Thus, the subject matter of Terra Firma's first three claims falls squarely within the conduct covered by the Project Mulberry Agreement. The mandatory forum selection clause contained in the Project Mulberry Agreement provides broadly that disputes regarding "[t]his letter and the relationship between the parties" are to be litigated in England. (*Id.* ¶ 30.) Counts I through III of Terra Firma's Complaint, concerning information disclosed during the bidding for EMI, clearly fall within this provision.

This clear reading of the Project Mulberry Agreement's forum selection clause is supported under both English and Second Circuit law. English law favors the enforcement of forum selection clauses, as explained in the Declaration of Adrian Briggs, a barrister and Professor of Private International Law at the University of Oxford. (Briggs Decl. ¶ 15.) English courts give forum selection clauses "a wide material scope, with a view to ensuring that the agreement on jurisdiction extends to include claims which are not contractual, and includes

claims which arise from a legal relationship distinct from the contract." (*Id.* ¶ 16.) Thus, under English law, "forum selection clauses are enforced in actions founded on torts, even where the plaintiff has not pleaded a claim for breach of contract." (*Id.*)

Likewise, the Second Circuit also favors broad enforcement of parties' agreement as to choice of forum. "The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the public policy favoring their use." *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557, 2009 WL 2029796, at *14 (E.D.N.Y. June 10, 2009). Courts in this Circuit regularly dismiss statutory, tort, and fraud claims in order to enforce forum selection clauses. *See Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09 Civ. 7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (clause providing that the "parties hereby submit to the exclusive jurisdiction of the English courts" held to apply to claims for fraud, misrepresentation, and deceptive trade practices where the entire relationship between the parties arose out of the contract, and the claims depended on issues of contract performance); *see also, e.g.*, *Roby*, 996 F.2d at 1361; *J.B. Harris, Inc. v. Razei Bar Indus. Ltd.*, 37 F. Supp. 2d 186, 191-92 (E.D.N.Y. 1998), *aff'd*, 181 F.3d 82 (2d Cir. 1999) (Table). Moreover, "a forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship." *CFirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) (internal quotation omitted).

Thus, under either English or Second Circuit law, the Project Mulberry Agreement forum selection clause bars Terra Firma's first three claims, each of which purports

to plead a different cause of action arising out of misinformation purportedly provided to Terra Firma by Citi that allegedly led Terra Firma to submit its winning bid for EMI.[4]

## B. Terra Firma's Claim Regarding Citi's Performance Under the Finance Agreements Must Also Be Litigated in England

Terra Firma is similarly required to litigate in England Count IV of its Complaint, which is connected to Citi's conduct under the Finance Agreements. Those agreements provide that "[t]he courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement (including a dispute regarding the existence, validity or termination of this Agreement)." (Simpkin Decl. Ex. 4 ¶ 43.1; *see also id.* Ex. 5.) Terra Firma claims injury in connection with Citi's alleged violations of its obligations under the Finance Agreements, including its confidentiality obligations. (Compl. ¶ 157; Simpkin Decl. Ex. 4 ¶ 30.7.) More generally, Terra Firma alleges that Citi has "interfered with Plaintiffs' business relationship with EMI through unfair and improper means, including but not limited to extreme and unfair economic coercion" in the manner in which Citi has managed the debt issued under the Finance Agreements. (Compl. ¶ 195.)

It is clear that the alleged misconduct occurred "in connection with" the Finance Agreements. And although it is true that Maltby rather than Terra Firma is the signatory to these Agreements on the Terra Firm side, the forum selection clauses are enforceable against Terra Firma, which is seeking to enforce Maltby's contractual rights. The Complaint makes clear,

---

[4] The first three causes of action also fall within the mandatory forum selection clauses of the Finance Agreements. Terra Firma asserts that Citi wrongfully induced it to bid in order to secure the lucrative role of lender to Terra Firma. (Compl. ¶¶ 125, 142.) The Finance Agreements mandate the parties to submit to the exclusive jurisdiction of the courts of England "any dispute arising out of or in connection with" the agreements. Insofar as Terra Firma had pleaded that Citi fraudulently and negligently misrepresented information concerning Terra Firma's bid in order to earn lender's fees for the bank, the claims are "in connection with" the Finance Agreements and should be resolved in English courts.

repeatedly, that Terra Firma draws no distinction between itself and Maltby, the entity that actually bid for and acquired EMI with the aid of financing provided by Citi. Thus, the Complaint alleges: "Terra Firma purchased EMI in 2007." (Compl. ¶ 1.) Similarly, Terra Firma pleads that Citi acted "as sole financier to Terra Firma," and "has recklessly disregarded Terra Firma's rights and interests in connection with the EMI transaction." (*Id.* ¶¶ 1-2.) In the same vein, Terra Firma alleges that Citi acted as the "the sole lender to Terra Firma in its purchase of EMI," and that Terra Firma agreed to the terms of the Finance Agreements. (*Id.* ¶¶ 158, 124, 149.) Blurring any distinction between Terra Firma and Maltby, the Complaint asserts that "Terra Firma/Maltby" attempted to renegotiate the debt with Citi, and that Citi put pressure "on Terra Firma/Maltby." (*Id.* ¶¶ 152, 154.)

    The allegations of the Complaint are consistent with Citi's experience throughout the auction, negotiation of the transaction financing and administering of the credit. As Citi's declarations show, all of Citi's contacts have been with persons who held themselves out as employees of Terra Firma in London. (Simpkin Decl. ¶ 11, Cockerill Decl. ¶¶ 10-12.)

    English law requires Terra Firma to be bound by the forum selection clauses executed by Maltby. Although English law takes a strict view as to who may bound by a contract, English law does not permit a party both to seek the benefits of a contract and to deny the effect of other aspects of that same contract. (Briggs Decl. ¶ 17.) Additionally, where a party holds itself out as the contracting party (as Terra Firma does in its Complaint), an English court will likely apply principles of estoppel to preclude it from also asserting that it is not bound by the contract. (*Id.*)

    The same conclusion is compelled under U.S. law. The specific language of this forum selection clause – "arising out of or in connection with this Agreement" – has been

broadly interpreted, such that the claim alleged by Terra Firm plainly falls with its scope. "The phrase[] 'in connection with' . . . [is] synonymous with the terms 'with respect to,' 'with reference to' and 'relating to,' which mean 'connected by reason of an established or discoverable relation.'" *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580, 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008) (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (noting phrase "in connection with" interpreted broadly)); *see also Russbeer Int'l LLC v. OAO Baltika Brewing Co.*, No. 07-CV-1212, 2008 WL 905044, at *5 (E.D.N.Y. Mar. 31, 2008) (clause covering disputes that arose "in connection" with a contract held to cover plaintiff's claim that defendant's termination of the parties' relationship resulted in a violation of statute).

The Second Circuit has also held that non-parties may be bound to a forum selection clause: "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Rather, "it is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Cuno, Inc. v. Hayward Indus. Prods., Inc.*, No 03 Civ. 3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (internal quotations omitted). A mandatory forum selection clause can be enforced against a non-party who is "'closely related to the dispute such that it becomes foreseeable that it will be bound.'" *Id.* (quoting *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No 02 Civ. 0767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003)) (internal quotation omitted). "A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's

interests or conduct." *Cuno, Inc.*, 2005 WL 1123877, at *6 (internal quotations omitted). That is plainly the case with Terra Firma here.

Thus, under either English or Second Circuit law, the forum selection clauses contained in the Finance Agreements cover both the claim and the parties, and thus require Terra Firma to bring Count IV in England. *See, e.g.*, *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557, 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009) (enforcing forum selection clause against plaintiff whose injury, and therefore interests in the litigation, was "directly related to, if not predicated upon" the interest of a signatory); *BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 275-76 (D. Conn. 2009) (manager and director of a hedge fund entitled to enforce agreement between plaintiffs and the fund).

## II.
## THIS ACTION SHOULD BE DISMISSED ON
## THE GROUND OF *FORUM NON CONVENIENS*

Even if this Court were to conclude that the forum selection clauses described above did not warrant dismissal, this action should nevertheless be dismissed on the ground of *forum non conveniens*.

This lawsuit is brought by a private equity firm based in London. It concerns Terra Firma's purchase of London-based EMI in an auction governed by English law, conducted under the City Code. Terra Firma alleges that Citi made fraudulent statements – in London – in connection with that auction, in order to secure financing agreements entered into in London. Terra Firma also alleges that Citi subsequently interfered with Terra Firma's relationship with EMI, a relationship based in London. Nearly all relevant events, witnesses, and documents are located in London. Almost nothing of consequence related to this case occurred in New York. Under these circumstances, it is plain that the courts of England are the appropriate forum for this action, and that it bears no connection – let alone the required "bona fide" connection – to

this forum. And because England is an adequate alternative forum, this case should be dismissed in favor of that forum.

This Court engages in a three-part inquiry in deciding whether to dismiss on *forum non conveniens* grounds, examining: (1) the level of deference given to plaintiff's choice of forum; (2) whether an adequate alternative forum exists; and (3) the various public and private factors as set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003). In essence, this inquiry goes to answering the question of whether the lawsuit has a sufficient connection to the chosen forum such that the forum has a significant interest in using the court's time, and the taxpayers' money, to resolve the dispute.

Where, as here, each part of that inquiry weighs heavily in favor of dismissal, the courts of this District have repeatedly dismissed on grounds of *forum non conveniens*. *See, e.g.*, *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 476, 487 (S.D.N.Y. 2006) (dismissing where "the events at issue . . . [had] little, if any connection to the District" and were "centered on events that occurred in England."), *aff'd*, 233 Fed. Appx. 83 (2d Cir. 2007); *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 534 (S.D.N.Y. 2006), *aff'd*, 223 Fed. Appx. 37 (2d Cir. 2007) (dismissing where "the core operative facts . . . at best may have only marginal links to the plaintiff's selected forum."); *Aguinda v. Texaco*, 142 F. Supp. 2d 534, 537 (S.D.N.Y. 2001) (Rakoff, J.), *aff'd as modified*, 303 F.3d 470 (2d Cir. 2002) (dismissing where "[n]either lawsuit allege[d] any injury to persons, property, or commerce in the United States," and the record established "overwhelmingly that these cases have everything to do with Ecuador and nothing to do with the United States."). This case should likewise be dismissed in favor of the English forum.

### A.     Terra Firma's Choice of Forum Is Entitled to Little or No Deference

Terra Firma's choice of forum is entitled to little or no deference.

*First*, as a foreign plaintiff with no connection to the forum, Terra Firma is entitled to less deference than a U.S. plaintiff.  *Pollux*, 329 F.3d at 71.  That is because in such circumstances, "it is more likely that forum shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection."  *Id.*  Because Terra Firma is seeking a jury trial rather than adjudication by a specialized court in England that would be applying its own jurisdiction's law and would have the power to award attorneys' fees to Citi if it prevailed (Briggs Decl. ¶ 13), the level of deference that should be awarded to Terra Firma's choice is slight indeed.

*Second*, Terra Firma is not entitled to deference because the Project Mulberry Agreement and the Finance Agreements contain mandatory forum selection clauses requiring this dispute to be litigated in England.   Indeed, the Finance Agreements specifically acknowledge that  "the courts of England are the most appropriate and convenient courts to settle Disputes and accordingly no Party will argue to the contrary."  (Simpkin Decl. Ex 4 ¶ 43.1.)  As both this Court and the Second Circuit have recognized, the presence of forum selection clauses in agreements between the parties "eliminates" any presumption that plaintiff might otherwise enjoy in favor of his chosen forum.  *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 511 (2d Cir. 1998), *remanded to* 41 F. Supp. 2d 447, 452 (S.D.N.Y. 1999) (Rakoff, J.).  That is because Terra Firma "should not have expected that any of their disputes would be litigated in the United States."  *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 696-97 (S.D.N.Y. 2003) (giving plaintiffs "little deference" and dismissing complaint), *aff'd*, 98 Fed. Appx. 47 (2d Cir. 2004).  As a result, the Court should analyze the remaining *forum non conveniens* factors "with a level set of balances, rather than one weighed

heavily in favor of the plaintiff's choice of forum." *Evolution Online*, 41 F. Supp. 2d at 452 (internal quotation omitted).

*Third*, the events giving rise to this lawsuit do not have the required "bona fide" connection to this forum. The alleged fraudulent conduct took place in London. As described above, nearly every event of consequence, and nearly all relevant witnesses, are located in England. The courts in this District have repeatedly concluded that plaintiffs such as Terra Firma who have no logical connection to the forum are likely engaging in forum shopping when "neither the plaintiffs nor the events giving rise to the lawsuit have any bona fide connections to the United States." *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 444 (S.D.N.Y. 2007) (according plaintiffs "very little deference" and dismissing claims), *aff'd sub nom. Geier v. Omniglow Corp.*, 2009 WL 4893668 (2d Cir. Dec. 21, 2009) (slip op.). As a result, that choice should be accorded little or no deference.[5] *See Pollux*, 329 F.3d at 71 ("[T]he appropriate level of deference depend[s] on the plaintiffs' relationship with the Southern District of New York.").

**B.    The Courts of England Are an Available and Adequate Alternate Forum**

England is an adequate alternate forum. An alternative forum is adequate if "the defendants are amenable to suit in that forum, and . . . the forum permits suits involving the

---

[5]    In an attempt to plead a connection to this District, Terra Firma pleads that an unnamed "very senior Citi executive" in New York was "personally involved" in ensuring that Citi financed Terra Firma's bid for EMI. (Compl. ¶ 122.) Terra Firma also makes reference to a Citi analyst report about the publicly traded stock of Warner – which Terra Firma alleges was nonetheless intended to harm Terra Firma and affect Terra Firma's continuing business relationship with EMI. (Compl. ¶¶ 155-160.) These allegations purporting to raise a "faint connection to the United States" are not sufficient to withstand *forum non conveniens* dismissal. *Pollux*, 329 F.3d at 74. The facts remain that the auction was conducted in London; the financing was arranged in London; and the impact of the analyst report and any other post-closing conduct on Terra Firma's relationship with EMI was felt in London.

subject matter of the dispute." *Gilstrap*, 443 F. Supp. 2d at 481. Both prongs of the adequacy test are met here.

*First*, Citi agrees to consent to jurisdiction in the courts of England, and is amenable to process there. (*See* Briggs. Decl. ¶ 11 (explaining that the English court would have jurisdiction to adjudicate the dispute if defendants consented to being sued there).)

*Second*, the claims Terra Firma pleads are recognized in English courts. (*Id.* ¶¶ 5-10.) Subpoenas of witnesses, discovery of documents, and enforcement of any judgment could also be handled pursuant to English procedure. (*Id.* ¶ 12.) Accordingly, English courts have repeatedly been found to be an adequate forum for the type of dispute presented here. *See Pollux*, 329 F.3d at 75; *Gilstrap*, 443 F. Supp. 2d at 481; *MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 253 (S.D.N.Y. 1999) (Rakoff, J.).

## C. The Balance of Public and Private Interests Weighs in Favor of Litigation in England

The final prong of the analysis is an assessment of the public and private interest factors set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). The public interest factors – having local disputes settled locally, avoiding problems associated with the application of foreign law, and imposing jury duty on citizens of the forum – weigh heavily in favor of dismissal. A balancing of the private interests also favors litigation in England, because the sources of proof are overwhelmingly located there.

### 1. The Public Interest Factors Favor Litigation in England

In weighing the public interests at stake, courts recognize that there is a strong interest "in having localized controversies decided at home." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981). Moreover, "[w]hen most of the events took place in a foreign forum or forums and involve mostly foreign parties, the United States and its citizens have less interest in

the resolution of the action than the foreign forum." *Saab v. Citibank, N.A.*, No. 00 Civ. 6784, 2001 WL 1382577, at *5 (S.D.N.Y. Nov. 7, 2001) (granting dismissal despite location of Citibank's headquarters in New York). As this Court has held, where "all events of substance" occur in a foreign forum, the balance of interests points towards that forum. *Evolution Online*, 41 F. Supp. 2d at 452. Here, almost of all of the events of substance occurred in England and center around individuals based there. England thus has a far greater interest in the resolution of the dispute than the United States or this District. *See Pollux*, 329 F.3d at 76 (noting that London had a "stronger local interest" where events giving rise to alleged fraud and misrepresentation occurred there, as compared with "New York's generalized interest in overseeing the bank").[6]

England also has a greater interest because its law will likely apply to Terra Firma's claims. In considering the application of foreign law, it "is well established that a court considering a forum non conveniens motion should not engage in a complex conflict of laws inquiry," but, rather, should determine "the likelihood that foreign law will apply." *Varnelo v. Eastwind Transp. Ltd.*, No. 02 Civ. 2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb. 3, 2003). The Second Circuit assessed that likelihood in *Pollux*, where it upheld dismissal because English law would likely apply to the "preponderance of plaintiffs' tort claims," "most of the relevant conduct occurred in England," and choice of law provisions in finance agreements at issue made clear that English law would likely apply to plaintiffs' contractual claims. 329 F.3d at 76. The same conclusion is compelled here. *See Corporacion Tim, S.A.*, 418 F. Supp. 2d at 536; *see also Saab*, 2001 WL 1382577, at *5. Because the courts of England "are in the best position to

---

[6] Terra Firma has demanded a jury trial in this action. Given the "small local interest in the dispute, it would be burdensome for a New York jury to hear and decide this case." *Pollux*, 329 F.3d at 76. This factor also points toward dismissal.

determine and apply their own law," this litigation should be dismissed in favor of litigation in England. *Evolution Online*, 41 F. Supp. 2d at 452.[7]

      2.    <u>The Private Interest Factors Favor Litigation in England</u>

      In balancing the private interests, the Court weighs factors such as "access to sources of proof[,] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." *Piper Aircraft*, 454 U.S. at 241 n.6. Because the relevant sources of evidence are overwhelmingly based in England – including documents and numerous witnesses, many of whom are non-parties and are beyond the compulsory processes of this Court – the balance of private interests weighs strongly in favor of litigation abroad.

      Multiple Citi employees critical to the events surrounding this case are located in London. This list includes the members of the Project Mulberry team, members of the leveraged finance and securitization teams that handled Terra Firma's debt financing, and the team handling Terra Firma's classified credit. (Smith Decl. ¶ 3; Simpkin Decl. ¶¶ 5-8; Cockerill Decl. ¶ 9.) The vast majority of Citi's files related to the Project Mulberry auction, the financing, and the on-going relationship are maintained in London. (Smith Decl. ¶ 4; Simpkin Dec. ¶ 4, Cockerill Decl. ¶ 7.) Terra Firma personnel, including those working on the bid for EMI and the subsequent financing, are also located in London. (Smith Decl. ¶ 9; Simpkin Decl. ¶ 10; Cockerill Decl. ¶¶ 10-12.)

---

[7] Another public interest factor to be considered is administrative difficulties relating to court congestion. *Gulf Oil*, 330 U.S. at 508. This factor does not weigh in favor of keeping the case in New York, and is, at most, neutral. Like this Court, cases in England's Commercial Court generally go to trial within approximately a year. (Briggs Decl. ¶ 14.) As an additional matter, Terra Firma's claims are based on common law and do not invoke federal or New York statutes. This also points towards dismissal in favor of England. *See Gilstrap*, 443 F. Supp. 2d at 476 (dismissing complaint in favor of England where English law was likely to apply to claims and no federal statutory claims were asserted).

Numerous non-parties also are based in London. For instance, former EMI senior management – including its former CFO, CEO, and non-executive chairman – are located in London. (Smith Decl. ¶ 6.) The former Terra Firma employees who negotiated the terms of Terra Firma's financing are also located in London. (Simpkin Decl. ¶ 10.) Other London-based non-parties include witnesses from Greenhill, the firm charged with running the auction, the law firm Freshfields, and financial services firms Deutsche Bank and Dresdner Kleinwort. (Smith Decl. ¶¶ 11-14.) As evidenced by the "Project Mulberry Working Party List," there were scores of relevant personnel in London working on the deal. (Id. Ex 4.) London-based legal counsel from Cleary Gottlieb and Weil Gotshal also provided assistance to Citi and Terra Firma, respectively, with regard to the financing of the acquisition. (Simpkin Decl. ¶¶ 12-13.)

Given the overwhelming number of documents and witnesses based in England – including multiple non-party witnesses outside of the compulsory processes of this Court – the private interest factors weigh heavily in favor of litigation abroad. *See Pollux*, 329 F.3d at 75 (dismissal appropriate where "Chase identified several key witnesses whose testimony can be compelled only in England while plaintiffs have not demonstrated that any material witnesses would be unavailable there"); *Gilstrap*, 443 F. Supp. 2d at 488 (granting dismissal where "the majority of party and non-party witnesses are based in England," including "key witnesses who are likely to be central to a resolution of issues raised in the complaint"); *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 253 (finding London to be the most convenient forum where "a preponderance of the key documents and witnesses are located" there).

## Conclusion

Citi's motion to dismiss the Complaint pursuant to mandatory forum selection clauses and on the ground of *forum non conveniens* should be granted.

Dated:  New York, New York
       January 21, 2009

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:          /s/ Jay Cohen
    Brad S. Karp (bkarp@paulweiss.com)
    Theodore V. Wells, Jr. (twells@paulweiss.com)
    Jay Cohen (jaycohen@paulweiss.com)
    John F. Baughman (jbaughman@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990

*Attorneys for Defendants Citigroup Inc., Citibank, N.A., Citigroup Global Markets Limited, and Citigroup Global Markets Inc.*