```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
TERRA FIRMA INVESTMENTS (GP) 2        :
LIMITED, and TERRA FIRMA INVESTMENTS  :
(GP) 3 LIMITED,                       :   09 CV 10459 (JSR)
                                      :
               Plaintiffs,            :   OPINION
                                      :
          -v-                         :
                                      :
CITIGROUP INC., CITIBANK, N.A.,       :
CITGROUP GLOBAL MARKETS LIMITED, and, :
CITIGROUP GLOBAL MARKETS INC.,        :
                                      :
               Defendants.            :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

In this action, removed from state court to federal court on December 23, 2009, plaintiffs Terra Firma Investments (GP) 2 Limited and Terra Firma Investments (GP) 3 Limited (collectively, "Terra Firma") assert that defendants Citigroup Inc., Citibank N.A., Citigroup Global Markets Limited, and Citigroup Global Markets Inc. (collectively, "Citi") fraudulently induced Terra Firma to purchase the London-based music group EMI at an inflated price by misrepresenting that another company was bidding for EMI at a high price when in fact the other company had withdrawn from the bidding. See Complaint ("Compl.") ¶¶ 128-31. Citi timely moved to dismiss the Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on the grounds that certain mandatory forum selection clauses require Terra Firma to bring this suit in England, or, alternatively, that this District is not a convenient forum and the

Court should dismiss on the ground of <u>forum</u> <u>non</u> <u>conveniens</u>.  On March 24, 2010, the Court issued a "bottom-line" Order denying Citi's motion, with Opinion to follow.  This is that Opinion.

The allegations of the Complaint here pertinent are the following.  In April 2007, David Wormsley, a senior Citi investment banker and the head of the M&A Team of Citigroup Global Markets Limited, contacted Guy Hands, the Chairman of Terra Firm Capital Partners Holdings Ltd., an affiliate of Terra Firma, about making an offer to purchase EMI, which was being considered for purchase by several private equity firms.  Compl. ¶ 102.  On May 10, 2007, Terra Firma submitted an "indicative bid" and proceeded to undertake due diligence.  <u>Id.</u> ¶¶ 106-110, 115-16.  On Friday, May 18, 2007, the EMI Board accelerated the time for binding offers to be made to 9 AM on Monday, May 21, 2007.

Terra Firma thereupon made, through the investment vehicles of Maltby Investments and Maltby Acquisitions (collectively, "Maltby"), a bid of £ 2.65 per share, <u>id.</u> ¶¶ 134-36, which was accepted.  Terra Firma alleges that it was led to make this bid by Wormsley's alleged misrepresentation to Hands "that there was another bidder in the auction for EMI; that the other bidder would bid on Monday morning at £ 2.62 per share; that a bid of £2.65 per share by Terra Firma would ensure that EMI's Board recommended Terra Firma's offer to EMI's shareholders; and that a failure by Terra Firma to

provide a bid by Monday, May 21, 2007 at 9:00 AM at or above £ 2.62 would ensure that Terra Firma would lose the EMI auction to the other bidder." Id. ¶¶ 11-12, 129.

Terra Firma alleges that these representations were knowingly false because Wormsley knew that the other bidder, Cerberus, had already withdrawn from the auction. Id. ¶ 130. The false representations were made, because, at this price, "Terra Firma would have no alternative but to rely on Citi's financing for the Acquisition." Id. ¶ 131. Moreover, if Wormsley had revealed that Cerberus had withdrawn, it would have signaled that EMI's value was less than what Terra Firma had been led to believe, id. ¶ 9-10, and Terra Firma would not have submitted any bid at all, id. ¶¶ 13, 146.

Based on these allegations, Terra Firma brings three causes of action in connection with the purchase of EMI: (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) fraudulent concealment. Additionally, Terra Firma brings a fourth cause of action, for tortious interference with prospective economic advantage. This last count is based on allegations that Citi interfered with Terra Firma's relationship with EMI by publishing falsely negative reports concerning Terra Firma's management of EMI. Id. ¶ 195.

So far as the first three counts are concerned, the argument that these claims may only be brought in England is premised primarily on an agreement, known as the Project Mulberry Agreement

3

("PMA" or "Agreement"), that Terra Firma was required to sign when it first entered the bidding, in order to preserve the confidentiality of the process. The PMA, on its face, is an agreement between Terra Firma and EMI; but some of its provisions also bind "Connected Persons," which the PMA defines as each signatory's "advisers, agents and representatives." Declaration of Matthew Smith, Ex. 2 (the PMA), at 1-2. It is undisputed that Citi, although not a party to the PMA, is a "Connected Person" under the Agreement.

So far as forum selection is concerned, ¶ 30 of the PMA provides that "[t]his letter and the relationship between the parties shall be governed by, and construed in accordance with, English law, and we each irrevocably submit to the exclusive jurisdiction of the English courts." Id. ¶ 30. The first issue before this Court, then, is whether this mandatory forum selection clause applies to suits (such as the instant one) brought by a party to the Agreement against a Connected Person. See Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007).

In arguing that ¶ 30 is here applicable, Citi points to the general language in the Agreement that the "undertakings" in the Agreement are "given to each of us in our own favour and in favour of our respective connected persons," PMA at 3, and, more importantly, to ¶ 27 of the Agreement, which provides that "[e]ach of our respective Connected Persons shall have the right under the Contracts (Rights of Third Parties) Act 1999 to enforce the terms of this

4

letter (as it may be amended from time to time), subject to and in accordance with: (a) the terms of paragraph 30 (Governing Law and Jurisdiction) . . . ." Id. at 10. Thus, if Citi were suing Terra Firma (or EMI) in connection with "enforc(ing) the terms" of the PMA, it would have to do so in England.

But the Agreement is significantly silent on the reverse situation, viz., whether Terra Firma, as a party to the PMA, can sue a Connected Person outside of England. The reason for this is obvious: the PMA did not specify who the Connected Person were and their very identities might well not be known or determined at the time the PMA was entered into. It was thus essential to make certain that any suit by a Connected Person be brought in a pre-determined forum, here, England. But there would be no advantage to the signatory parties in not being able to bring their own suits against a Connected Person wherever it might be convenient to sue such a Connected Person. Moreover, such a suit would most likely not involve "enforc(ing) the terms" of the PMA in any event.

If there were any thought to the contrary, it would have been equally easy for the signatories to draft the PMA so as to expressly require the signatories to sue Connected Persons in England; but the parties chose not to do so. Nor is there any other clause in the contract that addresses this issue with anything like the specificity of ¶ 27. If the general language cited by Citi regarding the

5

"undertakings" gave Citi the right to force Terra Firma to bring suit against it in England, then ¶ 27 would, in fact, be superfluous.

By its terms, moreover, the PMA is to be construed under English law, and the one and only English case cited by the parties that remotely addresses this issue, Morgan Stanley & Co. v. China Haisheng Juice Holdings Co., [2009] EWCH 2409, 2009 WL 2958741 (Comm. 2009), completely refutes Citi's position. In that case, the Commercial Court in the Queen's Bench Division of England's High Court of Justice held that an exclusive English forum selection clause did not apply to suits by a signatory against a non-signatory, even though the contract gave "affiliates," like "Connected Persons" here, certain rights to enforce the terms of the contract. The Commercial Court interpreted the forum selection clause, which, like the one at issue here, expressly referred only to the parties, not to the affiliates, to require only that a party bring a claim against another party to the contract in England, but not to require that a party bring a claim against an affiliate in England. Id. at ¶¶ 28-29, 31. While Citi argues that this case was erroneously decided, it remains the only English case cited by the parties that is directly on point and thus must be given great deference.

As for Terra Firma's fourth count (for tortious interference with prospective economic advantage), Citi contends that Terra Firma is required to litigate this claim in England, because of separate forum selection clauses contained in several Finance Agreements

entered into between Citi and Maltby (the investment vehicle Terra Firma used to acquire EMI). Each of these Finance Agreements contains a mandatory forum selection clause that states that "[t]he courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement (including a dispute regarding the existence, validity or termination of this Agreement)." Declaration of Paul Simpkin in Support of Defendants' Motion to Dismiss, dated Jan. 20, 2010, Ex. 5 (Finance Agreement), at 165. Although Citi concedes that "Maltby rather than Terra Firma is the signatory to these Agreements on the Terra Firma side," Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(3) Pursuant to Mandatory Forum Selection Clauses and for Forum Non Conveniens ("Def. Mem.") at 14, Citi argues nonetheless that the forum selection clauses are enforceable against Terra Firma because Terra Firma "draws no distinction between itself and Maltby," id. at 15. But while the language of the Complaint at times appears to collapse the two entities -- and at other times to distinguish them, compare Compl. ¶¶ 1, 144 with id. ¶ 152 -- Terra Firma has adduced persuasive evidence that Citi itself regarded Maltby and Terra Firma as separate and distinct entities, see Declaration of Christopher E. Duffy, dated Feb. 4, 2010, Exs. 3-4. Moreover, at oral argument, both parties agreed that English law is much stricter than the law elsewhere in limiting enforcement of such clauses to only the signatory parties

and those who are strictly "in privity" with those parties. See tr., 03/04/10, at 16, 20. Here there is no evidence before the Court that reasonably suggests that Maltby was viewed by Citi as being in privity with Terra Firma, let alone that English law would construe the relationship that way.

Moreover, even assuming, arguendo, that the absence of privity could be overcome here, the Finance Agreements are actually irrelevant, because Terra Firma's tortious interference claim does not seek to enforce rights under the Finance Agreements. Rather, as the Complaint makes explicit, the heart of the fourth count is the allegedly "misleading statements in the Citi Report in September 2009," Compl. ¶ 195, which was critical of Terra Firma's handling of EMI, id. ¶¶ 159-60, 195. This has nothing to do with the Finance Agreements.[1]

As for Citi's alternative motion to dismiss for forum non conveniens, Citi is headquartered in New York and Terra Firma's decision to sue Citi on Citi's home turf is entitled to some weight. See Bigio v. Coca-Cola Co., 448 F.3d 176, 179 (2d Cir. 2006) ("The more that a plaintiff, even a foreign plaintiff, chooses to sue in a United States court for legitimate reasons, the more deference must be given to that choice."). Although England would provide an

---

[1] The same analysis likewise negates Citi's belated contention, buried in a footnote, that the first three causes of action are also governed by the Finance Agreements' forum selection clauses. See Def. Mem. at 14 n. 4.

8

adequate alternative forum, the Court concludes that the balance of public and private factors tip in favor of retaining this case here. See Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001) (if adequate alternative forum exists, district court must weigh balance of public and private factors).

As to the private factors, English law is routinely applied in this district. Gross v. British Broad Corp., 386 F.3d 224, 234 (2d Cir. 2004) ("there are few if any countries in the world whose body of law is more amenable to application in the United States than Great Britain's."); Eclaire Advisor Ltd. v. Daewoo, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005). Three of the four Citi defendants are located in New York, and thus can hardly complain that being sued in their home location is an inconvenience. Moreover, the difficulties of discovery are mitigated by instant communication and rapid transport, especially for sophisticated corporate entities such as the parties in this case, thus diminishing any supposed inconvenience that litigating the case in this forum might impose on Citi. See Eclaire Advisor, 375 F. Supp. 2d at 265. A number of witnesses are located in the United States, and while some witnesses are located in England and may not be subject to compulsory process, the reverse is also true, and this Court has expressed its willingness and ability to assist the parties in obtaining any foreign discovery. See Bigio, 448 F.3d at 179-80 ("to the extent there are witnesses abroad who are beyond the court's subpoena power, their testimony can be provided by

depositions taken pursuant to letters rogatory.").[2] Finally, the parties are well on their way to completing discovery, and a firm trial date has been set for October 18, 2010.  Thus, the case is already on course to be brought promptly to a conclusion.

As to the public factors, there is a legitimate U.S. interest in learning whether Citi, a major American bank, may be liable for fraudulent inducement, and thus subject to substantial damages.  See Bigio, 448 F.3d at 180 (emphasizing district court failed to account among public factors that suit involved U.S. company's liability for damages).  While London may have a claim to interest in this case, as many of the alleged activities giving rise to the claims occurred there, see Pollux Holding, Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 76 (2d Cir. 2003), there is little doubt that New York also has considerable interest in the outcome of this litigation, cf. Metito (Overseas) Ltd. v. GE, No. 05 Civ. 9478 (GEL), 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006) ("New York State also has an interest in the conduct of 'industrial giants like General Electric' that are incorporated in New York, and whose 'far-flung activities' may affect perceptions of the United States and New York State in countries around the world."); see also Declaration of Inga Van Eysden, dated Feb. 4, 2010, at ¶ 7 (asserting New York City pensioners have direct and substantial interest as investors in Terra Firma).

---

[2] Indeed, the Court has, at the request of defendants, already propounded Letters Rogatory to the English courts.

Balancing the relevant factors and giving moderate deference to Terra Firma's choice of forum, the Court concludes that Citi has not shown that Terra Firma's chosen forum is "genuinely inconvenient" and that the alternative forum is "significantly preferable." Iragorri, 274 F.3d at 74-75. Since the balance of factors does not "tilt[] heavily in favor of the alternative forum," Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir. 2009), the Court finds that dismissal under forum non conveniens is inappropriate. Indeed, given the Court's interpretation of the PMA's mandatory forum selection clause -- as well as the fact that the forum selection clauses in the Finance Agreements require only Maltby to bring suit in England, whereas Citi can bring suit "in any other courts with jurisdiction," Finance Agreement, at 165 -- this forum is precisely the kind of forum that the parties bargained for.

For the foregoing reasons, the Court affirms its previous ruling denying Citi's motion to dismiss.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 25, 2010