CONFIDENTIAL
Stokes, Ian - 8/6/2010

Page 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - -
IN THE MATTER OF                                )
                                                )
TERRA FIRMA INVESTMENTS (GP) LIMITED            )
(for and on behalf of the six limited           )
constituting the Terra Firma Capital            )
Partners II Fund), and TERRA FIRMA              )
INVESTMENTS (GP) 3 LIMITED (for and             )
on behalf of Terra Firma Capital                )
Partners III, L.P.),                            )
               Plaintiffs,                      )   INDEX NO.
          v.                                    )   603737/2009
                                                )
CITIGROUP INC., CITIBANK N.A.,                  )
CITIGROUP GLOBAL MARKETS LIMITED                )
and CITIGROUPGLOBAL MARKETS, INC.,              )
               Defendants.                      )
- - - - - - - - - - - - - - - - - - - - - - -

CONFIDENTIAL VIDEOTAPED DEPOSITION OF IAIN STOKES

VOLUME I

Friday, August 6, 2010

AT: 9:02 a.m.

Taken at:

Paul Weiss
Alder Castle
10 Noble Street
London, EC2V 7JX
United Kingdom

Court Reporter:

Leanne Shipp
Accredited Real-time Reporter

Page 147

```
 1   what the document does, which all the questions in this
 2   series, so same objection.
 3   BY MR. BAUGHMAN
 4           Q.   You can answer.
 5           MS. DYER:  You can answer.
 6           A.   Would you repeat the question, please?
 7   BY MR. BAUGHMAN
 8           Q.   As a director, did you believe you were
 9   exercising your fiduciary duty, authorizing a bid up to 285p
10   when the only information you had was that Cerberus was
11   going to bid less than 265?
12           MS. DYER:  Objection to form.  And Jack, if you
13   can read the recommendation in the question, that's one
14   thing, but it's with the ability to increase this offer to
15   285 pence per share.
16           MR. BAUGHMAN:  Please don't coach the witness.
17   You can object --
18           MS. DYER:  No, you're mischaracterizing the
19   document.
20           MR. BAUGHMAN:  I'm not -- I'm not referring to the
21   document.  I'm asking a question.  I'm perfectly entitled to
22   ask whatever questions I want.
23           MS. DYER:  Well, you've mischaracterized the
24   document for about ten times.
25           A.   And I'm sorry, but can I ask you to repeat
```

CONFIDENTIAL
Stokes, Ian - 8/6/2010

Page 148

1   the question, please?
2   BY MR. BAUGHMAN
3       Q.   You had information that Cerberus was going
4   to bid less than 265, correct?
5       A.   Yes.
6       Q.   Did you have any information that anyone else
7   was going to bid at any price?
8       A.   Um ... not --
9       Q.   Okay, so why --
10      A.    -- specifically.
11      Q.   -- did you consider making a bid at any price
12  higher than 265?
13      MS. DYER:   Ob -- objection to form.
14      A.   It was to -- it was to -- to allow us the
15  head room.  It was to -- to use an expression, to line up
16  our ducks, at this stage we're actually lining up our ducks,
17  so should a -- an escalation of the bid occur, then the
18  board had considered that possibility and had allowed any --
19  any counter bid to be -- to be responded to.
20  BY MR. BAUGHMAN
21      Q.   When you voted to authorize a bid of 265p,
22  did you believe that you were paying fair market value for
23  EMI?
24      MS. DYER:   Objection to form.
25      A.   Um ... as part of the process leading up to

CONFIDENTIAL
Stokes, Ian - 8/6/2010

Page 149

1   this meeting, the board had considered that the assets of
2   Dice could support a price of 265 and subsequently felt
3   that, you know, it could, if needs be, go up to 285, but
4   there was never any need to go higher than the 265.
5   BY MR. BAUGHMAN
6       Q.   In bidding 265p, did you feel that you were
7   bidding more than the assets of the company were worth?
8       MS. DYER:  Objection to form.  You can answer.
9       A.   We felt as a board that the assets were a --
10  supportable at that price.  That -- that -- that it could
11  support the capital structure that was required at that
12  price.
13  BY MR. BAUGHMAN
14      Q.   I'm going to mark as the next Exhibit 18
15  a document with the Bates Nos. TF97070 to 97146.
16      (Stokes Exhibit 18 marked for identification)
17      Q.   Exhibit 17 is a document marked,
18  "Project Dice presentation to the IAC", dated May 2007.  Do
19  you see that?
20      A.   Exhibit 18.
21      Q.   I'm sorry, sir, thank you.  Now, is this the
22  presentation that you reviewed as part of the meeting at the
23  airplane hangar on April 20 -- May 20, 2007?
24      MS. DYER:  Objection to form.
25      A.   Um ... I can't specifically recall that it

Page 150

```
 1    was -- it was this one, but it's not unreasonable.
 2    BY MR. BAUGHMAN
 3              Q.    Okay.  Well, the minutes, Exhibit 15, refer
 4    to ... um ... a presentation dated May 20, 2007, right?
 5              A.    Yes, they do.
 6              Q.    Okay.  And I've given you a document that
 7    says "Project Dice" and it's May 20, 2007.  Are you aware of
 8    any other presentation?
 9              A.    No.  No, I'm not.  And as I said earlier,
10    it's reasonable to presume that this was the document that
11    was tabled.
12              Q.    Okay.  When you use the word "tabled", you
13    mean brought forward for discussion, right?
14              A.    There was -- there was the -- it was
15    a document -- there was a document in any discussion, yes.
16              Q.    I'm not trying to be tricky.  It's a total
17    British/American --
18              A.    That's fine.
19              Q.    -- usage --
20              A.    Fine.
21              Q.    -- thing.
22              A.    Okay.
23              Q.    In America, to table something means to stop
24    talking about it.
25              A.    No.
```