CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
IN THE MATTER OF TERRA FIRMA INVESTMENTS
(GP) LIMITED (for and on behalf of
The six limited partnerships
Constituting the Terra Firma
Capital Partners II Fund), and
TERRA FIRMA INVESTMENTS (GP) 3
LIMITED (for and on behalf of
Terra Firma Capital Partners
III, L.P.),

                           Plaintiffs,

09:04:05         vs.                    Index No.
                                 09-CIV-10459

CITIGROUP INC., CITIBANK
N.A., CITIGROUP GLOBAL MARKETS
LIMITED and CITIGROUP GLOBAL
MARKETS, INC.,
                       Defendants.
----------------------------------------x
               CONFIDENTIAL
                    July 21, 2010
                    9:00 a.m.

        Videotaped Deposition of

DARRELL L. WILLIAMS, Ph.D., taken by Defendants,

pursuant to Notice, at the offices of Paul,

Weiss, Rifkind, Wharton & Garrison LLP, 1285

Avenue of the Americas, New York, New York,

before TAMMEY M. PASTOR, a Registered

Professional Reporter, Certified LiveNote

Reporter and Notary Public within and for the

State of New York.

CONFIDENTIAL
Williams, Darrell - 7/21/2010

|  |  |  |
|---|---|---|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 09:48:43 | 2 | it is one entity. |
| 09:48:44 | 3 | Q.   Do you have any understanding of |
| 09:48:47 | 4 | the nature of the affiliate relationships |
| 09:48:51 | 5 | between Terra Firma, between the Terra Firma |
| 09:48:55 | 6 | entities and the EMI company? |
| 09:49:08 | 7 | A.   Could you repeat that, please. |
| 09:49:10 | 8 | (The pending question was read as |
| 09:49:10 | 9 | follows: |
| 09:48:45 | 10 | "Question:   Do you have any |
| 09:48:45 | 11 | understanding of the nature of the |
| 09:48:48 | 12 | affiliate relationships between Terra |
| 09:48:53 | 13 | Firma, between the Terra Firma entities |
| 09:48:55 | 14 | and the EMI company?") |
| 09:49:11 | 15 | A.   I don't understand what you mean |
| 09:49:12 | 16 | by affiliate relationships. |
| 09:49:13 | 17 | Q.   Do you understand that there are |
| 09:49:19 | 18 | several affiliates of what you've described as |
| 09:49:21 | 19 | Terra Firma? |
| 09:49:24 | 20 | A.   I really have no understanding of |
| 09:49:25 | 21 | the legal structure of the firm.  It wasn't |
| 09:49:28 | 22 | necessary for purposes of my analysis. |
| 09:49:30 | 23 | Q.   Do you know one way or the other? |
| 09:49:31 | 24 | A.   I mean I have heard that there is |
| 09:49:35 | 25 | more than one entity.  But for the purposes of |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 39

|  |  |  |
|--|--|--|
| | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 09:49:38 | 2 | my analysis I couldn't name them.  But I don't |
| 09:49:40 | 3 | he know specifically what their relationship is |
| 09:49:41 | 4 | beyond that there is, you know, an Advisory |
| 09:49:47 | 5 | Committee and someone who is executing in |
| 09:49:49 | 6 | general.  But those legal distinctions are |
| 09:49:51 | 7 | really not important for the economic analysis. |
| 09:49:56 | 8 | Q.   Do you think that those legal |
| 09:49:58 | 9 | distinctions are important in any way for a |
| 09:50:00 | 10 | damages analysis? |
| 09:50:00 | 11 | MR. GRAVANTE:  Objection to the |
| 09:50:03 | 12 | form. |
| 09:50:03 | 13 | A.   I'm not here as a damages expert. |
| 09:50:06 | 14 | So, I really have no opinion one way or the |
| 09:50:08 | 15 | other with respect to damages. |
| 09:50:11 | 16 | Q.   Do you realize you offer an |
| 09:50:12 | 17 | opinion on damages in your report? |
| 09:50:14 | 18 | MR. GRAVANTE:  Objection to the |
| 09:50:15 | 19 | form. |
| 09:50:15 | 20 | A.   I do not offer an opinion on |
| 09:50:17 | 21 | damages in my report.  I certainly cite to what |
| 09:50:23 | 22 | others have opined on with respect to damages. |
| 09:50:26 | 23 | But I am not rendering a separate opinion, nor |
| 09:50:28 | 24 | do I in my report on damages. |
| 09:50:34 | 25 | Q.   So, is it fair to say then with |

Page 40

|  |  |  |
|---|---|---|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 09:50:35 | 2 | your testimony that you are not offering a |
| 09:50:40 | 3 | damages opinion in this case? |
| 09:50:42 | 4 | MR. GRAVANTE:  Objection to the |
| 09:50:44 | 5 | form. |
| 09:50:44 | 6 | A.    I am not -- beyond just stating |
| 09:50:47 | 7 | what I did in the report which was really to |
| 09:50:49 | 8 | refer to what others have done, I am not |
| 09:50:51 | 9 | independently in any way rendering a damage |
| 09:50:55 | 10 | opinion in this case. |
| 09:50:56 | 11 | Q.    Why did you, if you're not |
| 09:50:58 | 12 | rendering a damages opinion in this case, why |
| 09:51:00 | 13 | did you refer to the damages opinions of one or |
| 09:51:08 | 14 | more other experts? |
| 09:51:09 | 15 | MR. GRAVANTE:  Objection to the |
| 09:51:10 | 16 | form. |
| 09:51:12 | 17 | A.    It's not unusual for me to |
| 09:51:14 | 18 | reference work by others in any of my reports. |
| 09:51:19 | 19 | You'll see I reference a number of studies in |
| 09:51:21 | 20 | my report.  I referenced other experts in this |
| 09:51:27 | 21 | reporting and other reports. |
| 09:51:29 | 22 | So referencing outside studies is |
| 09:51:31 | 23 | typical.  That's all I have done here is |
| 09:51:33 | 24 | reference it.  I am not rendering any |
| 09:51:35 | 25 | independent opinion. |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 41

|          |    |                                                |
|----------|----|------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL               |
| 09:51:36 | 2  | Q.    Thank you.  Just so I'm clear,          |
| 09:51:44 | 3  | what is your assignment, Dr. Williams, as a   |
| 09:51:49 | 4  | retained expert for the Plaintiffs in this    |
| 09:51:51 | 5  | case?                                          |
| 09:51:51 | 6  | A.    My role generally, which is             |
| 09:52:05 | 7  | described in paragraph 3 of my report, again  |
| 09:52:13 | 8  | generally I was retained to assess the economic |
| 09:52:16 | 9  | incentives for the Plaintiffs with respect to |
| 09:52:21 | 10 | the alleged fraud, what consequences those    |
| 09:52:23 | 11 | incentives may have for its bidding behavior. |
| 09:52:26 | 12 | And then also to assess the                   |
| 09:52:30 | 13 | credit market conditions and what implications |
| 09:52:32 | 14 | that that might have for the eventual outcome |
| 09:52:34 | 15 | of the bidding process.                       |
| 09:52:38 | 16 | Q.    Do you understand whether or not        |
| 09:52:41 | 17 | Plaintiffs have retained other experts in this |
| 09:52:44 | 18 | case?                                         |
| 09:52:44 | 19 | A.    I generally understand there are        |
| 09:52:47 | 20 | other experts in this case, yes.              |
| 09:52:49 | 21 | Q.    Do you know who they are?               |
| 09:52:50 | 22 | A.    I do know that Professor Teece          |
| 09:52:54 | 23 | has been retained in this case.  And I do know |
| 09:52:56 | 24 | that Ms. DeMario has been retained in this case |
| 09:53:01 | 25 | and there may be others.                      |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 60

```
         1              DARRELL L. WILLIAMS-CONFIDENTIAL
10:17:18 2              Q.    Did you draw any conclusions from
10:17:20 3      the data that they gathered on that topic?
10:17:22 4              A.    I certainly learned a fact.  The
10:17:32 5      fact is that there was -- as I suspected and
10:17:36 6      even the data in his report shows there was a
10:17:38 7      significant decline in the, both the number and
10:17:44 8      the dollar value of LBO activity in the summer
10:17:52 9      of '08.
10:17:57 10             Q.    In the summer of '08 or '07?
10:18:00 11             A.    '07.  Sorry.
10:18:02 12             Q.    That's fine.  And I don't recall
10:18:03 13     specifically the time period for which you saw
10:18:09 14     significant decline in number and dollar value
10:18:14 15     in LBOs?
10:18:15 16             A.    Well I looked at it relative
10:18:18 17     to -- I looked at it relative to the May 21st
10:18:21 18     bid date.  And so compared to the period before
10:18:23 19     that bid date there was a significant decline
10:18:26 20     in both the number and value for the period
10:18:30 21     before the bid date compared to the period
10:18:33 22     after the bid date.
10:18:34 23             Q.    Do you know how far back in time
10:18:36 24     before the May 21, 2007 bid date you had staff
10:18:41 25     look?
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 61

| | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
|---|---|---|
| 10:18:46 | 2 | A.    I don't recall specifically how |
| 10:18:47 | 3 | far back they gathered the data. |
| 10:18:51 | 4 | MR. CARNEY:   Why don't we take a |
| 10:18:53 | 5 | break, Dr. Williams, we have to change a |
| 10:18:55 | 6 | tape anyway. |
| 10:18:56 | 7 | VIDEOGRAPHER:  Here now marks the |
| 10:18:57 | 8 | end of tape 2 of the deposition of |
| 10:18:59 | 9 | Dr. Darrell L. Williams.  The time is |
| 10:19:02 | 10 | 10:18 a.m. We are now off the record. |
| 10:19:04 | 11 | (Recess taken.) |
| 10:27:59 | 12 | VIDEOGRAPHER:  Here now marks the |
| 10:29:24 | 13 | beginning of tape 2 of the deposition of |
| 10:29:26 | 14 | Dr. Darrel L Williams.  The time is 10:28 |
| 10:29:30 | 15 | a.m. We are back on the record. |
| 10:29:32 | 16 | EXAMINATION CONDUCTED BY MR. CARNEY: |
| 10:29:32 | 17 | Q.   Welcome back, Dr. Williams.  Can |
| 10:29:34 | 18 | you turn to your report, please, paragraph 3. |
| 10:29:47 | 19 | You say in your first sentence there "I have |
| 10:29:50 | 20 | been retained by Plaintiffs to analyze the |
| 10:29:52 | 21 | economic incentives facing Terra Firma before |
| 10:29:54 | 22 | it committed its final bid absent the |
| 10:29:57 | 23 | fraudulent conduct alleged in the Complaint." |
| 10:30:00 | 24 | Can you tell me what the economic |
| 10:30:02 | 25 | incentives are that you're referring to in that |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 62

|  |  |
|--|--|
|  | 1 |

                        DARRELL L. WILLIAMS-CONFIDENTIAL

10:30:04   2    sentence?

10:30:13   3            A.    I am simply referring to the

10:30:14   4    gains associated with various options that

10:30:17   5    would be facing the Plaintiff at that point in

10:30:19   6    time.

10:30:23   7            Q.    And what are those gains as you

10:30:30   8    identify them?

10:30:36   9            A.    Well I think a key component of

10:30:39  10    looking at the economic incentives is what

10:30:42  11    bargaining power, what bargaining power would

10:30:45  12    the Plaintiff have under different scenarios,

10:30:48  13    what the stock price would be at the time of

10:30:51  14    any alleged bidding is expected to be.

10:30:57  15                  How the marketing power of the

10:31:03  16    target might change over time. Those are some

10:31:11  17    of the factors.

10:31:11  18            Q.    Any others?

10:31:14  19            A.    Those are key ones, as I think

10:31:16  20    about it now.  I may think of others later.

10:31:24  21            Q.    Can you describe for me a little

10:31:27  22    more what you mean when you reference

10:31:30  23    bargaining power, how is the bargaining power

10:31:33  24    of either Terra Firma or EMI an economic

10:31:39  25    incentive?

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 63

|  |  |  |
|---|---|---|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 10:31:47 | 2 | A.    Well you have to start with the |
| 10:31:48 | 3 | basic premise that the purchaser wants to pay |
| 10:31:52 | 4 | the lowest possible price.  And so when you |
| 10:31:57 | 5 | start with that basic -- that basic goal, then |
| 10:32:02 | 6 | the bargaining power at any particular point in |
| 10:32:05 | 7 | time is relevant to their ability to get a |
| 10:32:08 | 8 | lower price. |
| 10:32:08 | 9 | Q.    In that same sentence in |
| 10:32:16 | 10 | paragraph 3 you reference the fraudulent |
| 10:32:19 | 11 | conduct alleged in the Complaint, what is your |
| 10:32:21 | 12 | understanding of what the fraudulent conduct |
| 10:32:22 | 13 | is? |
| 10:32:26 | 14 | A.    My general understanding of the |
| 10:32:28 | 15 | fraudulent conduct, at least as it directly |
| 10:32:31 | 16 | relates to what I'm doing is the allegation |
| 10:32:36 | 17 | that Terra Firma had been given incorrect |
| 10:32:41 | 18 | information with regard to the competitive |
| 10:32:52 | 19 | bidding that was likely to occur as of May 21, |
| 10:32:55 | 20 | whether or not Cerberus would be bidding on May |
| 10:32:57 | 21 | 21 and that that information was relevant to |
| 10:33:02 | 22 | its decision-making. |
| 10:33:09 | 23 | Q.    Then in paragraph 6 you provide |
| 10:33:11 | 24 | your summary of opinions; correct? |
| 10:33:13 | 25 | A.    That's correct. |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 94

```
            1              DARRELL L. WILLIAMS-CONFIDENTIAL
11:11:43    2    considerations and there may be others.
11:11:44    3         Q.    When you say those are
11:11:45    4    considerations, are all of the things you just
11:11:51    5    mentioned economic incentives facing a
11:11:58    6    prospective bidder?
11:12:00    7         A.    I'm saying that those things
11:12:03    8    impact the economic incentives facing a
11:12:06    9    prospective bidder.  And therefore their
11:12:09   10    assessment of which choices might be best in
11:12:14   11    their interest.
11:12:54   12         Q.    Turn to paragraph 48 of your
11:12:55   13    report.  You say here "Therefore, on the basis
11:13:02   14    of my analysis, I conclude that Terra Firma
11:13:04   15    would have had an economic incentive to delay
11:13:08   16    its bid for EMI had it been informed about its
11:13:12   17    sole bidder status."
11:13:16   18                Do you see that?
11:13:17   19         A.    I do.
11:13:19   20         Q.    Even if you were right about
11:13:21   21    that, Dr. Williams, does this conclusion mean
11:13:24   22    that Terra Firma would have acted any
11:13:27   23    differently in the but for world?
11:13:32   24                MR. GRAVANTE:  Objection to the
11:13:37   25         form.
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 95

```
           1         DARRELL L. WILLIAMS-CONFIDENTIAL
11:13:37   2         A.    I believe that it would.  I mean
11:13:41   3    the basic role that I have in this matter is to
11:13:48   4    look at what the options are available to the
11:13:51   5    bidder in the but for world.  And, again, based
11:13:57   6    on the premise that bidders want to get the
11:14:05   7    lowest possible price, then I certainly think
11:14:11   8    having an economic incentive, that the economic
11:14:13   9    incentives of an expectation that you can get
11:14:18  10    expected lower price in the future could change
11:14:20  11    behavior.  Yes.
11:14:22  12         Q.    Are there other economic
11:14:25  13    incentives that could impact the decision of
11:14:26  14    Terra Firma to bid?
11:14:31  15         A.    There may be other economic
11:14:34  16    incentives in general, but, again, my
11:14:35  17    conclusion, taking into consideration the
11:14:41  18    economic factors that are impacting Terra Firma
11:14:44  19    is that in the but for world there was an
11:14:49  20    incentive to delay.
11:14:50  21         Q.    Would you agree with me that
11:14:52  22    Terra Firma was facing economic incentives that
11:14:56  23    weighed in favor of making a bid?
11:15:02  24         A.    In terms of assessing the likely
11:15:06  25    impact on behavior, as an economist what you
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 96

```
            1         DARRELL L. WILLIAMS-CONFIDENTIAL
11:15:13    2    want to look at is what the net effect is.
11:15:15    3              There is certainly a range of
11:15:20    4    considerations which I've taken into account,
11:15:22    5    but my conclusion is that the net impact is
11:15:25    6    that there was an expected gain from delaying.
11:15:32    7         Q.    As part of your analysis did you
11:15:33    8    take into consideration whether or not Terra
11:15:41    9    Firma considered that there would be other
11:15:45   10    competing bids made after the termination date?
11:15:54   11         A.    I did take that into account.  In
11:15:57   12    fact, I mean that is sort of their key
11:16:00   13    allegation here.  The key issue is how much
11:16:05   14    competition within the bidding process did
11:16:08   15    Terra Firma face.
11:16:10   16              And according to the allegations
11:16:12   17    in this case it was misinformed about the
11:16:14   18    extent of that competition, which therefore
11:16:16   19    induced a certain behavior in the actual world
11:16:19   20    that had that information been -- that in the
11:16:24   21    but for world it would have known what the
11:16:26   22    actual competitive position was in my opinion
11:16:28   23    would have induced a different outcome.
11:16:30   24         Q.    If Terra Firma believed that a
11:16:33   25    party other than Cerberus was a prospective
```

Page 97

```
              1          DARRELL L. WILLIAMS-CONFIDENTIAL
11:16:36      2    bidder for EMI, would it have had an economic
11:16:47      3    incentive to make the bid in response to that
11:16:49      4    perceived competition?
11:16:53      5          A.    In conducting my analysis I took
11:17:01      6    into consideration what might be called
11:17:06      7    competitive pressure.  And the general
11:17:14      8    conclusion is that there were various rumors
11:17:20      9    floating over a relatively long period of time
11:17:24     10    about various potential bidders.
11:17:31     11               And those rumors continued in
11:17:33     12    Dr. Fischel's language, both before, during and
11:17:39     13    after.  So there was really no change in the
11:17:41     14    competitive pressure per se.
11:17:42     15               What would have changed in the
11:17:44     16    but for world would have been the opportunity
11:17:49     17    to unilaterally terminate the auction with its
11:17:57     18    expected consequences on stock price and put it
11:18:05     19    in a different bargaining position in a post
11:18:07     20    May 21 world versus the pre May 21 world.
11:18:14     21          Q.    We've been talking about the but
11:18:16     22    for world and perhaps we should just define it
11:18:18     23    for the jury.  How would you define the but for
11:18:21     24    world?
11:18:22     25          A.    I generally I'm looking at two
```

Page 98

|   |   |   |
|---|---|---|

                    1           DARRELL L. WILLIAMS-CONFIDENTIAL
11:18:26   2      scenarios.  There might be multiple scenarios
11:18:28   3      under those, but I'm looking at the world in
11:18:31   4      which, the actual world in which the alleged
11:18:34   5      fraud occurred.  And then what I'm describing
11:18:37   6      as the but for world would be those conditions
11:18:39   7      that would existed in the absence of the
11:18:43   8      alleged fraud.
11:18:49   9           Q.    When you are positing a but for
11:18:51  10      world and looking at conditions that would
11:18:53  11      exist in a world absent the fraud, are part of
11:18:57  12      the conditions that you posit those that
11:19:01  13      respect the actions of other market
11:19:04  14      participants?
11:19:06  15           A.    I think I already testified that
11:19:19  16      I take into account competitive pressure and
11:19:23  17      rumors of other bids and so on.  So if that's
11:19:25  18      what you mean, that is being taken into
11:19:26  19      account.
11:19:27  20           Q.    As an economist, Dr. Williams,
11:19:31  21      you have in your work from time to time posited
11:19:34  22      but for worlds in your various analyses; is
11:19:37  23      that fair?
11:19:38  24           A.    It's certainly been the case in
11:19:43  25      other reports that using this construct of the

Page 111

|  |  |  |
|--|--|--|
| | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 11:34:25 | 2 | target company at the lowest possible price the |
| 11:34:27 | 3 | only economic incentives that a bidding company |
| 11:34:30 | 4 | faces? |
| 11:34:33 | 5 | MR. GRAVANTE:  Objection to the |
| 11:34:37 | 6 | form. |
| 11:34:37 | 7 | A.    The word, when you say the only |
| 11:34:39 | 8 | economic incentive, I think that's a little |
| 11:34:43 | 9 | confusing the way you say that. |
| 11:34:44 | 10 | The goal of purchasing an asset |
| 11:34:54 | 11 | at the lowest possible price is not an -- I |
| 11:34:59 | 12 | wouldn't even call it an economic incentive, |
| 11:35:01 | 13 | it's the goal.  It is what they are trying to |
| 11:35:04 | 14 | do.  It is wealth maximizing behavior, value |
| 11:35:08 | 15 | maximizing behavior. |
| 11:35:09 | 16 | So there are lots of economic |
| 11:35:14 | 17 | incentives that relate to that goal.  But the |
| 11:35:17 | 18 | goal is to get the asset at the lowest possible |
| 11:35:22 | 19 | price. |
| 11:35:22 | 20 | Q.    And you would agree therefore in |
| 11:35:24 | 21 | fact there are a lot of economic incentives |
| 11:35:28 | 22 | that bear upon a decision by a bidder to bid |
| 11:35:32 | 23 | for a target company; correct? |
| 11:35:37 | 24 | MR. GRAVANTE:  Objection to the |
| 11:35:48 | 25 | form. |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 112

|  |  |  |
|---|---|---|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 11:35:48 | 2 | A.    It's a little unclear the way |
| 11:35:50 | 3 | you're asking the question when you say there |
| 11:35:51 | 4 | are a lot of economic incentives.   There are a |
| 11:35:54 | 5 | lot of factors that might be considered.   Those |
| 11:35:58 | 6 | factors impact the economic incentives. |
| 11:36:00 | 7 | And the purpose of my analysis is |
| 11:36:03 | 8 | to look at what the net effect of those factors |
| 11:36:09 | 9 | are in order to ascertain what the incentive |
| 11:36:13 | 10 | might be.  So I think it is just a terminology |
| 11:36:19 | 11 | thing.  There are factors be considered.   We |
| 11:36:21 | 12 | talked about some of them. |
| 11:36:22 | 13 | Then those factors impact what |
| 11:36:26 | 14 | the economic incentive is. |
| 11:36:27 | 15 | Q.    So, it's fair to say that your |
| 11:36:31 | 16 | opinion is that on a net basis, balancing all |
| 11:36:38 | 17 | these factors, the economic incentives facing |
| 11:36:41 | 18 | Terra Firma would have weighed in favor of not |
| 11:36:46 | 19 | making a bid for EMI? |
| 11:36:48 | 20 | MR. GRAVANTE:   Objection to the |
| 11:36:49 | 21 | form. |
| 11:36:49 | 22 | Q.    Correct? |
| 11:37:03 | 23 | A.    Please. |
| 11:37:04 | 24 | (The pending question was read as |
| 11:37:04 | 25 | follows: |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 113

1           DARRELL L. WILLIAMS-CONFIDENTIAL

11:36:27  2            "Question:   So, it's fair to say

11:36:30  3        that your opinion is that on a net basis,

11:36:38  4        balancing all these factors, the economic

11:36:40  5        incentives facing Terra Firma would have

11:36:44  6        weighed in favor of not making a bid for

11:36:47  7        EMI?")

11:37:04  8        A.    I think that's not exactly

11:37:11  9    accurate because it's not a balancing -- it's

11:37:15 10    not a balancing of the leveling of all those

11:37:19 11    factors.  It is looking at·what factors change

11:37:22 12    in the but for world.

11:37:22 13            And the change -- it's my opinion

11:37:25 14    based on the is analysis that I've done in this

11:37:27 15    report that in the but for world focusing on

11:37:35 16    what changes in the but for world and what

11:37:36 17    impact those changes have on the economic

11:37:43 18    incentives, that the net effect of that change

11:37:44 19    is that there is an expected gain from

11:37:49 20    delaying.  And therefore that's where the

11:37:51 21    economic incentive to delay comes from.

11:37:53 22        Q.    As a result of your analysis, is

11:37:55 23    it your opinion, Dr. Williams, that in the but

11:37:57 24    for world Terra Firma would not have made a bid

11:38:02 25    for EMI?

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 114

|  |  |  |
|---|---|---|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 11:38:14 | 2 | (The pending question was read as |
| 11:38:14 | 3 | follows: |
| 11:37:53 | 4 | "Question:   As a result of your |
| 11:37:54 | 5 | analysis, is it your opinion, |
| 11:37:56 | 6 | Dr. Williams, that in the but for world |
| 11:38:01 | 7 | Terra Firma would not have made a bid for |
| 11:38:03 | 8 | EMI?") |
| 11:38:15 | 9 | A.   My opinion, as I stated in my |
| 11:38:22 | 10 | report is that the main opinions are, number |
| 11:38:25 | 11 | one, that based on the analysis that I've done |
| 11:38:27 | 12 | in the report and much of which we've discussed |
| 11:38:29 | 13 | here, is that Terra Firma had an incentive, |
| 11:38:35 | 14 | economic incentive to delay. |
| 11:38:38 | 15 | And based on the expected time of |
| 11:38:43 | 16 | that delay, that Terra Firma would have been in |
| 11:38:49 | 17 | a position to finance -- would have been in a |
| 11:38:53 | 18 | position where it would have been adversely |
| 11:38:55 | 19 | impacted by the credit conditions that |
| 11:38:57 | 20 | prevailed in the summer of 2007. |
| 11:39:00 | 21 | And in that scenario, it would be |
| 11:39:06 | 22 | very unlikely that that could get financing |
| 11:39:08 | 23 | terms that were similar to the terms that they |
| 11:39:12 | 24 | had if they could get financing terms at all in |
| 11:39:14 | 25 | the but for world. |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 118

|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
|--|---|--|

11:43:00  2   economic incentive to delay.  Then based on

11:43:03  3   empirical evidence of what the timing is

11:43:05  4   between, the timing of delays are,  the

11:43:09  5   subsequent bids would be, that they would be in

11:43:12  6   a position where they would be impacted by the

11:43:14  7   credit crisis.  And therefore, less likely to

11:43:21  8   receive financing in that situation, in that

11:43:25  9   but for world on the same terms, or at all, if

11:43:29 10   at all.

11:43:30 11        Q.   So your opinion, is it not,

11:43:33 12   Dr. Williams, is that in the but for world,

11:43:37 13   Terra Firma acted differently than it did in

11:43:40 14   the actual world; isn't that true?

11:43:47 15             MR. GRAVANTE:  Objection to the

11:43:47 16        form.

11:43:58 17        A.   The purpose of the analysis in

11:44:01 18   this case and economic analysis of but for

11:44:06 19   world in any matter is to ascertain what would

11:44:13 20   likely have happened but for the alleged

11:44:17 21   conduct.

11:44:18 22             And the reason why you have an

11:44:22 23   expert to do this is that we don't have the

11:44:24 24   benefit of observing what would have happened

11:44:28 25   absent the alleged conduct because in fact the

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 119

|  |  |  |
|--|--|--|
| | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 11:44:32 | 2 | conduct occurred. |
| 11:44:33 | 3 | So we can't see what would have |
| 11:44:35 | 4 | happened without the fraud, because the fraud, |
| 11:44:37 | 5 | the alleged fraud did occur.  So, the purpose |
| 11:44:40 | 6 | of the but for analysis, not just in this case, |
| 11:44:44 | 7 | not just what I've done, but generally in all |
| 11:44:49 | 8 | cases is to ascertain what would have likely |
| 11:44:51 | 9 | happened which may or may not be different from |
| 11:44:55 | 10 | what in the but for world compared to what |
| 11:44:58 | 11 | happened in the actual world given whatever |
| 11:45:00 | 12 | conduct is being challenged. |
| 11:45:02 | 13 | So that's what I've done here, |
| 11:45:05 | 14 | generally speaking. |
| 11:45:06 | 15 | Q.    My question concerns the |
| 11:45:09 | 16 | distinction that you make, if any, between |
| 11:45:13 | 17 | a party having an economic incentive to do |
| 11:45:16 | 18 | something and actually acting on that economic |
| 11:45:20 | 19 | incentive.  Do you understand that? |
| 11:45:21 | 20 | A.    I do understand that. |
| 11:45:23 | 21 | Q.    Okay.  So with that understanding |
| 11:45:26 | 22 | let me see if I can ask the question I asked |
| 11:45:29 | 23 | again -- I asked before. |
| 11:45:31 | 24 | Is it your opinion, Dr. Williams, |
| 11:45:33 | 25 | in the but for world, that Terra Firma would |

Page 120

          1              DARRELL L. WILLIAMS-CONFIDENTIAL
11:45:39  2      have actually delayed its bid for EMI because
11:45:47  3      of the economic incentives that it faced?
11:45:51  4              A.    It's my opinion, based on all the
11:45:58  5      analysis that I performed here, that in the but
11:46:03  6      for world Terra Firma would have had an
11:46:13  7      opportunity that would have known it had an
11:46:15  8      opportunity that didn't exist in the actual
11:46:18  9      world.  That additional opportunity provided
11:46:21 10      for providing them economic incentive to delay
11:46:26 11      the bid.  And it's my view that that economic
11:46:32 12      incentive was sufficient to induce them to
11:46:33 13      delay the bid such that in the but for world
11:46:37 14      they would have acted differently than they did
11:46:40 15      in the actual world.
11:46:41 16              Q.    And the economic incentive that
11:46:43 17      you identify in your last question is the net
11:46:50 18      incentives that you concluded would have been
11:46:54 19      apparent to Terra Firma having weighed in a
11:46:57 20      variety of factors that bore on its
11:47:02 21      decision-making; is that correct?
11:47:03 22              MR. GRAVANTE:  Objection to the
11:47:17 23          form.
11:47:17 24              A.    Please.
11:47:18 25              (The pending question was read as

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 121

|   |   |   |
|---|---|---|
|   | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 11:47:18 | 2 | follows: |
| 11:46:42 | 3 | "Question:   And the economic |
| 11:46:42 | 4 | incentive that you identify in your last |
| 11:46:45 | 5 | question is the net incentives that you |
| 11:46:52 | 6 | concluded would have been apparent to |
| 11:46:54 | 7 | Terra Firma having weighed in a variety of |
| 11:46:58 | 8 | factors that bore on its decision-making; |
| 11:47:19 | 9 | is that correct?") |
| 11:47:19 | 10 | A.   As an economist, it is not so |
| 11:47:39 | 11 | much I'm focusing on what would be apparent and |
| 11:47:42 | 12 | not apparent.  The only reason I'm saying that |
| 11:47:46 | 13 | I know "apparent" has particular meaning to |
| 11:47:48 | 14 | people generally. |
| 11:47:49 | 15 | What I am focused on as an |
| 11:47:51 | 16 | economist is what those economic incentives |
| 11:47:54 | 17 | are.  And the reason why as an economist I |
| 11:47:58 | 18 | believe it impacted behavior is that these are |
| 11:48:01 | 19 | sophisticated market participants.  They make a |
| 11:48:08 | 20 | living, and make a living at trying to get the |
| 11:48:13 | 21 | best possible return. |
| 11:48:14 | 22 | And to the extent there are |
| 11:48:16 | 23 | economic incentives that will have a |
| 11:48:18 | 24 | significant impact on those returns, then I |
| 11:48:22 | 25 | think I'm making what would be considered the |

Page 183

```
                1        DARRELL L. WILLIAMS-CONFIDENTIAL
14:02:10        2            that in the case of terminated bid process
14:02:16        3            the findings were that the share price of
14:02:19        4            a target company did in fact decrease;
14:02:22        5            isn't that true?")
14:02:38        6                MR. GRAVANTE:  Objection to the
14:02:38        7            form.
14:02:41        8        A.      I think as we've gone over
14:02:43        9    before, the results of the studies that I cited
14:02:46       10    with respect to the likely impact on the stock
14:02:55       11    price of ending a take over process,
14:02:58       12    unsuccessful ending of a take over process
14:03:01       13    along with the analyses I provided, is that on
14:03:07       14    average that decline, that information, that
14:03:11       15    publically available information lead to
14:03:14       16    negative stock price reaction.
14:03:16       17                That fact, I think this is where
14:03:19       18    you're going, just be clear, that fact in my
14:03:24       19    view suggests a reasonable basis for an
14:03:29       20    expectation on the part of the Plaintiff in
14:03:31       21    this case that had it acted by delaying its
14:03:36       22    bidding, that the expectation would have been
14:03:39       23    that that would have been an impact on the
14:03:41       24    stock price.
14:03:41       25        Q.      And if that impact on the stock
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 184

|  |  |  |
|--|--|--|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 14:03:45 | 2 | price had occurred, that would provide the |
| 14:03:50 | 3 | bidder with the potential for purchasing the |
| 14:03:53 | 4 | company at a lower price? |
| 14:03:58 | 5 | A.    Again, just to make sure we -- |
| 14:04:00 | 6 | that's not the only factor, I mean I know I |
| 14:04:03 | 7 | testified to this before. I will make sure I'm |
| 14:04:05 | 8 | clear.  It is not just that one factor.  It is |
| 14:04:07 | 9 | all the other factors that I mentioned.  But |
| 14:04:10 | 10 | when you take all the factors in totality, that |
| 14:04:13 | 11 | the expectation of a stock price decline, the |
| 14:04:16 | 12 | fact that the trends toward the bid and asked |
| 14:04:20 | 13 | impacts were declining over time.  The fact |
| 14:04:23 | 14 | that EMI was a distressed seller.  The fact |
| 14:04:26 | 15 | that the auction process was really set up to |
| 14:04:28 | 16 | benefit the target firm. |
| 14:04:33 | 17 | All those things combined would |
| 14:04:36 | 18 | lead to the conclusion that the economic |
| 14:04:40 | 19 | incentives were such that Terra Firma had |
| 14:04:44 | 20 | incentive to delay its bid. |
| 14:04:45 | 21 | Q.    And it had an incentive because |
| 14:04:48 | 22 | there was an opportunity to benefit from a |
| 14:04:51 | 23 | lower stock price as a result of the |
| 14:04:53 | 24 | termination of the bid process; is that |
| 14:05:00 | 25 | correct? |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

|          |    |                                                   |
|----------|----|---------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                  |
| 14:05:00 | 2  | A.    It had an incentive for all of              |
| 14:05:03 | 3  | the reasons that I gave.  Ultimately the reason   |
| 14:05:07 | 4  | being that all those factors put it in a          |
| 14:05:12 | 5  | position to get, to pay a lower price for the     |
| 14:05:17 | 6  | target firm.  Not just focusing on the stock      |
| 14:05:19 | 7  | price, but to get a better deal than it           |
| 14:05:21 | 8  | otherwise would have gotten but for the alleged   |
| 14:05:23 | 9  | conduct.                                          |
| 14:05:25 | 10 | Q.    Do you have an opinion,                     |
| 14:05:27 | 11 | Dr. Williams, as to what degree the stock price   |
| 14:05:32 | 12 | would have dropped in the but for world?          |
| 14:05:37 | 13 | A.    For the purposes of my analysis,            |
| 14:05:39 | 14 | the focus is really not on the magnitude.  I      |
| 14:05:44 | 15 | think, you know, as you can tell from my report   |
| 14:05:45 | 16 | I did not attempt to forecast that. I haven't     |
| 14:05:48 | 17 | forecasted it.                                    |
| 14:05:49 | 18 | So I don't have an opinion                        |
| 14:05:51 | 19 | specifically on what the -- I haven't tried to    |
| 14:05:54 | 20 | quantify that impact.  But what we do know is     |
| 14:05:59 | 21 | the impact, I think I say in my report is         |
| 14:06:01 | 22 | likely to be at least as large as the, at least   |
| 14:06:05 | 23 | as large as the bid announcement premium.         |
| 14:06:09 | 24 | And we've observed that in the                    |
| 14:06:11 | 25 | data, too, sometimes the news of a failure        |

Page 186

                    1          DARRELL L. WILLIAMS-CONFIDENTIAL
14:06:15    2    actually leads to a bigger impact than the
14:06:18    3    actual announcement did.  But I haven't
14:06:20    4    attempted to quantify that.
14:06:24    5          Q.    But it is the case that although
14:06:29    6    you haven't quantified the drop in the price,
14:06:34    7    that it's your opinion that in the but for
14:06:36    8    world the stock price of EMI would decline to
14:06:41    9    some degree.
14:06:49   10          A.    That's not necessary for my
14:06:51   11    opinion.  I think we are kind of mixing up the
14:06:54   12    analysis and the analysis.
14:06:55   13                The evidence shows that empirical
14:06:58   14    reality.  The basis of the empirical reality
14:07:01   15    across all these different analyses I presented
14:07:07   16    that the economic evidence consistently shows
14:07:10   17    this negative stock price reaction.
14:07:13   18                Therefore, well informed
14:07:15   19    participant has a reasonable expectation that
14:07:18   20    that would happen.  I have not gone as far as
14:07:21   21    trying to predict what would have happened in
14:07:23   22    the but for world, which is really not
14:07:25   23    necessary for my analysis because the conduct
14:07:27   24    would be based on what you would expect to
14:07:28   25    happen.

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 201

```
              1            DARRELL L. WILLIAMS-CONFIDENTIAL
14:27:05      2    bidding process is allowed to end
14:27:09      3    unsuccessfully.
14:27:10      4            So, certainly that comes into, it
14:27:13      5    takes into account the competitive pressures.
14:27:16      6    But it doesn't require a quantification of a
14:27:20      7    bid by an alternative bidder.
14:27:21      8        Q.    And your opinion does not require
14:27:29      9    that you posit the re-entry of a competitive
14:27:40     10    bidder into the process after May 21 in the but
14:27:43     11    for world; isn't that also true?
14:27:52     12        A.    I don't understand the question.
14:27:53     13    I mean I take into account competitive
14:27:56     14    pressure.  So you may be asking me something
14:27:58     15    specific about --
14:27:59     16        Q.    It's every simple. I understand
14:27:59     17    you have taken into account competitive
14:28:01     18    pressure.
14:28:02     19        A.    Right.
14:28:02     20        Q.    We talked about that before.  My
14:28:04     21    question is slightly different.
14:28:05     22        A.    Okay.
14:28:06     23        Q.    My question is whether it's your
14:28:07     24    opinion in the but for world a competitive
14:28:10     25    bidder would re-enter the bid process and bid
```

Page 202

|          |    |                                                  |
|----------|----|--------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                 |
| 14:28:15 | 2  | for EMI at a price below 2.65 pounds, simply     |
| 14:28:19 | 3  | whether your opinion encompasses that or not?    |
| 14:28:24 | 4  | A.    My opinion encompasses the                 |
| 14:28:26 | 5  | possibility of that. But that is not an opinion  |
| 14:28:29 | 6  | in my report. That is not part of the opinion    |
| 14:28:31 | 7  | because the opinion that I'm looking at is an     |
| 14:28:34 | 8  | opinion of what Terra Firma would likely do      |
| 14:28:37 | 9  | taking into account competitive pressure. So --  |
| 14:28:44 | 10 | Q.    Right.                                      |
| 14:28:44 | 11 | A.    So, there is no -- so when you             |
| 14:28:48 | 12 | say you posit this or don't posit that, that is  |
| 14:28:51 | 13 | irrelevant to the decision -- it is not          |
| 14:28:54 | 14 | relevant to the decisions that I analyze, only   |
| 14:28:57 | 15 | to the extent you have taken into account the    |
| 14:28:59 | 16 | competitive pressure, what competitors are       |
| 14:29:02 | 17 | likely to do.  That is taken into account.       |
| 14:29:04 | 18 | But that does not require the            |
| 14:29:06 | 19 | type of quantification I believe you are         |
| 14:29:08 | 20 | alluding to.                                     |
| 14:29:08 | 21 | Q.    In your but for world how long            |
| 14:29:13 | 22 | does Terra Firma delay making a bid?             |
| 14:29:16 | 23 | A.    Well, again, in my analysis it's          |
| 14:29:23 | 24 | based on to the extent possible data and         |
| 14:29:25 | 25 | analyses.                                        |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

|          |    | DARRELL L. WILLIAMS-CONFIDENTIAL |
|----------|----|----------------------------------|

```
              1       DARRELL L. WILLIAMS-CONFIDENTIAL
14:29:26      2              So we have a few benchmarks.  The
14:29:28      3   benchmarks are that between the Premira and
14:29:32      4   Warner bid there was 12 or 13 weeks.  And
14:29:35      5   between the Warner bid and the Terra Firma bid
14:29:39      6   it was in the 12 and 13 week range.
14:29:41      7              And then we also know from,
14:29:45      8   generally from academic research that the time
14:29:48      9   between subsequent bids by sole bidders is in
14:29:53     10   the nine week range.
14:29:53     11              So, those benchmarks would be the
14:29:58     12   best indication, in my view of the time
14:30:03     13   between, you know, one big consideration and
14:30:06     14   the next big consideration.
14:30:07     15        Q.    And if I accept what you say as
14:30:11     16   true and the range of potential delay you in
14:30:13     17   your but for world is approximately 12 to 13
14:30:18     18   weeks, is it your testimony that the price
14:30:25     19   effect that Terra Firma could have expected to
14:30:29     20   see in your but for world would not materialize
14:30:33     21   for 12 or 13 weeks?
14:30:35     22        A.    No.  That's incorrect.
14:30:37     23        Q.    So then why should we expect
14:30:41     24   Terra Firma in your but for world to delay for
14:30:44     25   that period of time before deciding whether or
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 204

|  |  |  |
|---|---|---|
|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 14:30:50 | 2 | not to re-enter the bid process given the lower |
| 14:30:54 | 3 | price that it would expect to see? |
| 14:31:02 | 4 | A.    I think you don't completely |
| 14:31:03 | 5 | understand the analysis.  So, these price |
| 14:31:08 | 6 | changes according to economic size, these |
| 14:31:14 | 7 | abnormal returns are being estimated are |
| 14:31:20 | 8 | permanent changes in the stock price based on |
| 14:31:22 | 9 | that information. |
| 14:31:23 | 10 | There might be other events that |
| 14:31:25 | 11 | occur that affect the value of the equity.  But |
| 14:31:29 | 12 | with respect to this particular event, those |
| 14:31:34 | 13 | changes are rapidly incorporated and they are |
| 14:31:38 | 14 | permanent. |
| 14:31:38 | 15 | So once the effect happens you |
| 14:31:42 | 16 | are at a new equilibrium level, if you will. |
| 14:31:45 | 17 | That equilibrium level, there might be random |
| 14:31:49 | 18 | variation, but generally you're going to be at |
| 14:31:51 | 19 | that same level, subject to other development. |
| 14:31:53 | 20 | Q.    And that equilibrium level of the |
| 14:31:56 | 21 | stock price will occur in a matter of days |
| 14:32:00 | 22 | after the announcement of the busted auction; |
| 14:32:03 | 23 | isn't that true? |
| 14:32:03 | 24 | A.    The stock price reaction would be |
| 14:32:08 | 25 | in response to publically available information |

Page 205

|           |    |                                                |
|-----------|----|------------------------------------------------|
|           | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL               |
| 14:32:10  | 2  | about the announcement which would be on or    |
| 14:32:13  | 3  | shortly after the ending date. Yes.            |
| 14:32:17  | 4  | Q.    And do you have a view as to how         |
| 14:32:19  | 5  | long it would take for the level of the stock  |
| 14:32:23  | 6  | price to reach this equilibrium level in       |
| 14:32:26  | 7  | response to this new public information about  |
| 14:32:29  | 8  | the termination of the bid process?            |
| 14:32:31  | 9  | A.    As we've seen from the research          |
| 14:32:33  | 10 | that I've presented in the report it happens   |
| 14:32:36  | 11 | rapidly, in a day or two.                      |
| 14:32:37  | 12 | Q.    Right. Is it your opinion within         |
| 14:32:43  | 13 | a day or two, having seen this negative stock  |
| 14:32:49  | 14 | price reaction, Terra Firma nonetheless would  |
| 14:32:51  | 15 | not make a renewed bid at that lower           |
| 14:32:54  | 16 | equilibrium price level?                       |
| 14:33:02  | 17 | A.    I think your question is what or         |
| 14:33:06  | 18 | let me phrase the question this way, what      |
| 14:33:08  | 19 | factors contribute to the timing of another   |
| 14:33:14  | 20 | bid.  I think the factors that contribute to  |
| 14:33:16  | 21 | the timing of another bid, first we have to    |
| 14:33:21  | 22 | look as an economist, the first thing I am     |
| 14:33:25  | 23 | going to do is look at the economic evidence.  |
| 14:33:26  | 24 | The economic evidence suggests                 |
| 14:33:28  | 25 | the time between bids with respect to this     |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 206

|           | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL |

14:33:36  2    particular case was in the 12 or 13 week range

14:33:39  3    and we've seen generally for larger samples for

14:33:41  4    big samples it has been in the nine week range

14:33:45  5    for sole bidders.

14:33:46  6              So empirically we have some

14:33:50  7    evidence of the time between bids then also

14:33:56  8    importantly I know you keep wanting to focus on

14:34:01  9    the stock price reaction, but I keep naming all

14:34:03 10    these other factors that matter, the bargaining

14:34:08 11    position of the bidder relative to EMI, EMI's

14:34:12 12    distressed situation, all of these factors

14:34:15 13    matter.

14:34:18 14              So if there is another bid I am

14:34:20 15    not trying to abstract from the bid process

14:34:22 16    that exists, I would imagine that, I would

14:34:25 17    imagine based on what's happened before there

14:34:27 18    would be negotiations and therefore the

14:34:32 19    empirical findings we have about the time

14:34:37 20    between the duration I believe is a reasonable

14:34:40 21    benchmark for what we might expect in this

14:34:42 22    case.  Maybe one of the best benchmarks.

14:34:48 23        Q.    First let me say I accept all the

14:34:50 24    other reasons that you've testified to before.

14:34:53 25    So when I ask you questions about the impact of

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 207

|          |    |                                                    |
|----------|----|----------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                   |
| 14:34:56 | 2  | the price change, I don't mean to exclude your    |
| 14:34:59 | 3  | prior testimony.  I understand your prior          |
| 14:35:01 | 4  | testimony on that.                                 |
| 14:35:04 | 5  |          But to keep us focused you                |
| 14:35:08 | 6  | referenced the empirical evidence as showing      |
| 14:35:11 | 7  | that there is a nine to 12 to 13 week period      |
| 14:35:16 | 8  | between bids.  The empirical evidence reflect     |
| 14:35:20 | 9  | that that period of time has passed for bids by  |
| 14:35:25 | 10 | the same bidder?                                   |
| 14:35:32 | 11 |          A.    It may or may not.  I'd have to    |
| 14:35:34 | 12 | check that.                                        |
| 14:35:39 | 13 |          Q.    Is it your opinion that when       |
| 14:35:45 | 14 | faced with the likely negative price impact      |
| 14:35:53 | 15 | arising from the decision to delay a bid, Terra  |
| 14:35:59 | 16 | Firma would not be bidding at the renewed         |
| 14:36:03 | 17 | equilibrium price it was presented with?         |
| 14:36:06 | 18 |          MR. GRAVANTE:  Objection to the          |
| 14:36:10 | 19 |          form.                                     |
| 14:36:10 | 20 |          A.    Well you're asking me a question,  |
| 14:36:12 | 21 | you're asking me to forecast the bid price,      |
| 14:36:14 | 22 | which I already said I haven't done.  So I        |
| 14:36:17 | 23 | can't answer that particular question.            |
| 14:36:19 | 24 |          Q.    Okay.  Did you consider whether    |
| 14:36:23 | 25 | or not in the but for world Terra Firma would    |

Page 221

```
              1          DARRELL L. WILLIAMS-CONFIDENTIAL
14:51:51      2               With respect to EMI, the time
14:51:53      3    between subsequent bids on two different
14:51:55      4    separate occasions was in the 12 to 13 week
14:51:58      5    range.  So that's my best estimate, as I have
14:52:02      6    said, I said this like four types, that's my
14:52:05      7    best estimate of what the duration of the delay
14:52:07      8    would be.
14:52:07      9               And in addition to that there is
14:52:10     10    academic studies that suggest that the delay
14:52:12     11    between subsequent bids is in the nine week
14:52:15     12    range.
14:52:15     13               So, those are the benchmarks that
14:52:19     14    I look to in trying to assess what the duration
14:52:23     15    of a delay might be.  That's based on objective
14:52:29     16    estimates.
14:52:29     17          Q.    And the two separate occasions
14:52:31     18    that you're referring to where this was a 12 to
14:52:37     19    13 week period between bids are what exactly?
14:52:43     20          A.    From Premira to, between the
14:52:45     21    Premira bid and the Warner bid there is a 12 or
14:52:48     22    13 week period.  And from the Warner bid to the
14:52:52     23    Terra Firma bid there was a 12 or 13 week
14:52:54     24    period.
14:52:55     25          Q.    In neither of those cases did the
```

Page 222

```
            1           DARRELL L. WILLIAMS-CONFIDENTIAL
14:52:59    2    two separate bids involve the same bidder; is
14:53:02    3    that true?
14:53:02    4           A.    In those two cases there were
14:53:04    5    different bidders.
14:53:04    6           Q.    And you referred to an Andrews &
14:53:09    7    Kurth study, is that what you referred to, the
14:53:11    8    other empirical evidence that suggested a nine
14:53:14    9    week period --
14:53:20   10           A.    Sorry.
14:53:20   11           Q.    No.   That's fine.   You also
14:53:25   12    referenced, did you not, another study, study
14:53:28   13    or studies by Andrews & Kurth that suggest the
14:53:32   14    delay between subsequent bids is in the nine
14:53:34   15    week range?
14:53:35   16           A.    I do believe nine weeks, there is
14:53:39   17    a nine week range, right. Which --
14:53:42   18           Q.    Do you cite that in your report?
14:54:43   19           A.    Quite frankly I don't remember
14:54:45   20    the citation on that as I sit here.
14:54:53   21           Q.    In the but for world if Terra
14:54:58   22    Firma expected a competing bid from Warner
14:55:08   23    Music Group for EMI would that impact your
14:55:13   24    testimony that it would likely delay making a
14:55:18   25    bid for nine to 13 weeks?
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

|          |    |                                                    |
|----------|----|----------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                   |
| 14:55:24 | 2  | MR. GRAVANTE:   Objection to the                   |
| 14:55:24 | 3  | form.                                              |
| 14:55:30 | 4  | A.   My opinion about the duration is              |
| 14:55:32 | 5  | just based on what the average duration is.        |
| 14:55:34 | 6  | There is our best evidence ex-ante of what the     |
| 14:55:38 | 7  | duration would be.                                 |
| 14:55:39 | 8  | Now, so, in some sense you sort                    |
| 14:55:44 | 9  | of change the factual situation in your            |
| 14:55:46 | 10 | hypothetical.                                      |
| 14:55:47 | 11 | Q.   It is a hypothetical.  That's                 |
| 14:55:48 | 12 | right.                                             |
| 14:55:49 | 13 | A.   What if a bid comes in before                 |
| 14:55:50 | 14 | that, would Terra Firma have an incentive.  If     |
| 14:55:54 | 15 | they wanted to acquire a company they would        |
| 14:55:56 | 16 | have an incentive to respond to that bid.          |
| 14:55:59 | 17 | But going back to my analysis I'm                  |
| 14:56:02 | 18 | just looking at the change in what their           |
| 14:56:04 | 19 | expected gains were.  So they would have           |
| 14:56:06 | 20 | incentive to respond to that bid at any time       |
| 14:56:09 | 21 | and they could still delay and get these           |
| 14:56:11 | 22 | benefits that I'm talking about and still have     |
| 14:56:14 | 23 | the opportunity to respond to any bidder that      |
| 14:56:15 | 24 | might bid at some subsequent period.               |
| 14:56:21 | 25 | Q.   But if under my hypothetical                  |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 224

|          |    |                                           |
|----------|----|-------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL          |
| 14:56:24 | 2  | Warner Music Group did come in with a competing |
| 14:56:26 | 3  | bid Terra Firma would not have the luxury of |
| 14:56:28 | 4  | delaying any counter bid for nine to 13 weeks; |
| 14:56:33 | 5  | isn't that true?                          |
| 14:56:34 | 6  | MR. GRAVANTE:  Objection to the           |
| 14:56:42 | 7  | form.                                     |
| 14:56:42 | 8  | A.   Look, this is outside the scope      |
| 14:56:44 | 9  | of my analysis first and foremost.  The scope |
| 14:56:46 | 10 | of my analysis is just what are the incentives |
| 14:56:50 | 11 | that are facing Terra Firma as of prior to the |
| 14:56:58 | 12 | deadline if they had known they were the sole |
| 14:57:00 | 13 | bidder.  What are their incentives at that |
| 14:57:03 | 14 | point.                                    |
| 14:57:03 | 15 | And what they do in response to           |
| 14:57:05 | 16 | something that actually happened subsequent to |
| 14:57:07 | 17 | that doesn't really change my opinion about |
| 14:57:12 | 18 | what their expectation are about the gain from |
| 14:57:15 | 19 | taking that action at that particular moment. |
| 14:57:20 | 20 | But in direct response to your            |
| 14:57:22 | 21 | question, which is not directly related to my |
| 14:57:25 | 22 | analysis, if nothing had changed in the world |
| 14:57:32 | 23 | that you imagine, if nothing had changed, if |
| 14:57:34 | 24 | Terra Firma still intended to acquire the EMI |
| 14:57:39 | 25 | and there was a subsequent bid, they may have |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 225

|           |    |                                                   |
|-----------|----|---------------------------------------------------|
|           | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                  |
| 14:57:42  | 2  | an incentive to respond to that, assuming         |
| 14:57:45  | 3  | everything else was the same.                     |
| 14:57:46  | 4  | But that's not necessary for the                  |
| 14:57:49  | 5  | purposes of my analysis.                          |
| 14:57:54  | 6  | Q.    But you do also opine, do you               |
| 14:57:56  | 7  | not, that financial conditions in the             |
| 14:58:02  | 8  | marketplace would have deteriorated during this   |
| 14:58:05  | 9  | period in which Terra Firma was delaying its      |
| 14:58:08  | 10 | bid such that Terra Firma would be unable to      |
| 14:58:10  | 11 | secure financing for that bid; isn't that true?   |
| 14:58:16  | 12 | MR. GRAVANTE:    Objection to the                 |
| 14:58:17  | 13 | form.                                             |
| 14:58:17  | 14 | A.    I am going to have to ask to have           |
| 14:58:19  | 15 | that read back.                                   |
| 14:58:37  | 16 | Q.    That's fine.                               |
| 14:58:37  | 17 | (The pending question was read as                 |
| 14:58:37  | 18 | follows:                                          |
| 14:57:54  | 19 | "Question:    But you do also                     |
| 14:57:55  | 20 | opine, do you not, that financial conditions in   |
| 14:58:02  | 21 | the marketplace would have deteriorated during    |
| 14:58:05  | 22 | this period in which Terra Firma was delaying     |
| 14:58:08  | 23 | its bid such that Terra Firma would be unable      |
| 14:58:10  | 24 | to secure financing for that bid; isn't that      |
| 14:58:13  | 25 | true?")                                           |

Page 226

|          |    |                                                   |
|----------|----|---------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                  |
| 14:58:39 | 2  | A.    I do opine that -- I do opine               |
| 14:58:41 | 3  | that Terra Firma, given the best estimate of      |
| 14:58:47 | 4  | the duration of the delay would be impacted by    |
| 14:58:52 | 5  | the credit crisis.  Again, so I am giving you     |
| 14:58:57 | 6  | my best estimate of a delay.                      |
| 14:58:59 | 7  | If there is any other evidence                    |
| 14:59:01 | 8  | that would relate to that, to what the delay      |
| 14:59:04 | 9  | might be, I'm happy to consider that. But as an   |
| 14:59:06 | 10 | economist, I have to look to the objective        |
| 14:59:09 | 11 | evidence and not speculate about what might       |
| 14:59:11 | 12 | have happened.                                    |
| 14:59:12 | 13 | Q.    So, if I understand, your opinion           |
| 14:59:14 | 14 | is the in but for world Terra Firma would have    |
| 14:59:17 | 15 | delayed making a bid for a range of nine to 13    |
| 14:59:23 | 16 | weeks, and during that period financial           |
| 14:59:26 | 17 | conditions would have deteriorated to an effect   |
| 14:59:29 | 18 | where it, Terra Firma, at the end of that         |
| 14:59:31 | 19 | period, would be unable to secure financing for   |
| 14:59:35 | 20 | a bid; is that your opinion?                      |
| 14:59:36 | 21 | MR. GRAVANTE:   Objection to the                  |
| 14:59:42 | 22 | form.                                             |
| 14:59:42 | 23 | A.    My opinion generally, I think it            |
| 14:59:44 | 24 | is generally consistent with what you said, but   |
| 14:59:47 | 25 | let me just state it for the record, my opinion   |

Page 227

|          |    |                                              |
|----------|----|----------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL             |
| 14:59:49 | 2  | is that but for the alleged fraud, Terra Firma |
| 14:59:52 | 3  | would have had an economic incentive to delay |
| 14:59:55 | 4  | its bid.  And that the estimate of the duration |
| 15:00:02 | 5  | of the delay, relying on data that we have in |
| 15:00:07 | 6  | our possession in this case is that the range |
| 15:00:09 | 7  | of that delay would be in the nine to 12 week |
| 15:00:14 | 8  | range based on the best available evidence. |
| 15:00:17 | 9  | And based on an assessment of |
| 15:00:20 | 10 | what the credit conditions were, that it would |
| 15:00:23 | 11 | be very unlikely that Terra Firma would be able |
| 15:00:28 | 12 | to acquire financing on similars terms, if at |
| 15:00:31 | 13 | all in that time period. |
| 15:00:34 | 14 | Q.    Do you state anywhere in your |
| 15:00:36 | 15 | report, Dr. Williams, that the likely delay in |
| 15:00:38 | 16 | the but for world would be nine to 13 weeks? |
| 15:00:48 | 17 | I'm looking at your section of |
| 15:00:50 | 18 | your report beginning paragraph 50.  Which is |
| 15:00:54 | 19 | titled Credit Constraints in the Debit Market |
| 15:00:57 | 20 | Adversely Impacted Terra Firma's Ability to Bid |
| 15:01:00 | 21 | After the Auction. |
| 15:02:12 | 22 | A.    I don't think that number is in |
| 15:02:13 | 23 | here, but I have the dates in here of the |
| 15:02:15 | 24 | auction, so it is easy to determine.  I don't |
| 15:02:18 | 25 | think that number is actually in here. |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 228

```
               1        DARRELL L. WILLIAMS-CONFIDENTIAL
15:02:36       2        Q.    Is it your opinion, Dr. Williams,
15:02:38       3   that in the but for world the market would not
15:02:42       4   have viewed EMI in play if there were no
15:02:45       5   bidders on May 21?
15:02:49       6        A.    It's my understanding as of May
15:02:54       7   21 that if Terra Firma had not bid that there
15:02:56       8   would not have been any active bids for EMI at
15:03:00       9   that time.  I don't know really exactly what
15:03:08      10   you mean by whether the market says it is in
15:03:11      11   play. My definition of whether it is in play or
15:03:14      12   being bid upon is if there is no bid pending at
15:03:17      13   that time.
15:03:17      14        Q.    So you have no opinion one way or
15:03:19      15   the other on the market reaction to a decision
15:03:28      16   by Terra Firma not to bid on May 21 in the but
15:03:34      17   for world?
15:03:34      18             MR. GRAVANTE:   Objection to the
15:03:34      19        form.
15:03:38      20        A.    We spent a lot of time talking
15:03:40      21   about the market reaction if they don't bid.
15:03:42      22   Are you saying May 21 versus May 23? I guess I
15:03:45      23   don't understand what you're asking me.
15:03:48      24        Q.    That's fair.  My real question is
15:04:00      25   whether you have an opinion as to whether the
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 263

|          |    |                                              |
|----------|----|----------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL             |
| 16:02:25 | 2  | separate things, both could be true, they are |
| 16:02:30 | 3  | not mutually exclusive.                       |
| 16:02:31 | 4  | Q.    But how do you know that? How do       |
| 16:02:34 | 5  | you know, Dr. Williams, if in the but for world |
| 16:02:36 | 6  | Terra Firma declines not to bid on the one   |
| 16:02:42 | 7  | hand, while at the same time there are rumors |
| 16:02:44 | 8  | in the marketplace about other competing     |
| 16:02:47 | 9  | bidders for EMI, how can you determine, how can |
| 16:02:52 | 10 | you determine the relevant effects on the stock |
| 16:02:54 | 11 | price from those two factors?                 |
| 16:02:59 | 12 | MR. GRAVANTE:    Same objection.             |
| 16:03:01 | 13 | A.    I'm sorry.  The event study           |
| 16:03:06 | 14 | methodology is designed for that very purpose. |
| 16:03:09 | 15 | That is what the event study methodology does. |
| 16:03:12 | 16 | Right. So, starting with that, starting with |
| 16:03:15 | 17 | how the events study methodology is how you do |
| 16:03:19 | 18 | that.                                         |
| 16:03:24 | 19 | Then also based on my, just based           |
| 16:03:28 | 20 | on the record evidence in this case, we've seen |
| 16:03:32 | 21 | unsuccessful bids associated with negative    |
| 16:03:34 | 22 | stock price reactions which I've documented,  |
| 16:03:37 | 23 | despite the fact there are rumors that someone |
| 16:03:40 | 24 | else might be out there bidding or might      |
| 16:03:42 | 25 | potentially bid in some future point in time. |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 264

|  | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
|---|---|---|
| 16:03:45 | 2 | We've observed it.  And we also |
| 16:03:51 | 3 | observed the converse of that, when there were |
| 16:03:53 | 4 | rumors out there that someone might be taking |
| 16:03:56 | 5 | over, they might submit a bid in this auction |
| 16:04:07 | 6 | that is the focus of my report we see a stock |
| 16:04:11 | 7 | price appreciation.  Which says that the |
| 16:04:15 | 8 | market, there is additional information that is |
| 16:04:17 | 9 | being incorporated that is separate from |
| 16:04:19 | 10 | whatever rumors that you're alluding to. |
| 16:04:41 | 11 | Q.   I'm sorry, just bear with me for |
| 16:04:43 | 12 | a second. |
| 16:04:58 | 13 | Turn to paragraph 46 of your |
| 16:05:00 | 14 | report it says "In the but for world where |
| 16:05:14 | 15 | Terra Firma did not receive the alleged |
| 16:05:15 | 16 | fraudulent information about the existence of |
| 16:05:17 | 17 | another bidder and instead was correctly |
| 16:05:19 | 18 | informed that it was the sole bidder before |
| 16:05:21 | 19 | placing its final bid, Terra Firma would have |
| 16:05:24 | 20 | had the ability to unilaterally bust the |
| 16:05:30 | 21 | auction by simply delaying its bid." |
| 16:05:33 | 22 | Do you see that? |
| 16:05:33 | 23 | A.   Yes. |
| 16:05:37 | 24 | Q.   First question, you state in that |
| 16:05:38 | 25 | sentence in your but for world "Terra Firma was |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 265

| | | |
|---|---|---|
| | 1 | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 16:05:42 | 2 | correctly informed that it was the sole bidder |
| 16:05:44 | 3 | before placing its bid." |
| 16:05:45 | 4 | Do you see that? |
| 16:05:46 | 5 | A.    Yes. |
| 16:05:47 | 6 | MR. GRAVANTE:  Objection to the |
| 16:05:51 | 7 | form. |
| 16:05:51 | 8 | Q.    Why is that the information that |
| 16:05:52 | 9 | Terra Firma would have received in the but for |
| 16:05:56 | 10 | world? |
| 16:05:56 | 11 | MR. GRAVANTE:  Objection to the |
| 16:05:57 | 12 | form. |
| 16:05:57 | 13 | A.    My understanding of the claims is |
| 16:05:58 | 14 | that the nature of the fraud was to inform |
| 16:06:05 | 15 | Terra Firma that it was bidding against one |
| 16:06:09 | 16 | other bidder, when in fact that other bidder |
| 16:06:13 | 17 | had already withdrawn.  They were the last two |
| 16:06:16 | 18 | bidders. |
| 16:06:17 | 19 | So, had that not been -- had that |
| 16:06:20 | 20 | not -- had they been told they were the sole |
| 16:06:24 | 21 | bidder, they would have known there was no one |
| 16:06:26 | 22 | else bidding against them. |
| 16:06:27 | 23 | Q.    Isn't the purpose of positing a |
| 16:06:32 | 24 | but for world to develop an alternative |
| 16:06:33 | 25 | scenario where the conduct did not occur? |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 266

|          |    | DARRELL L. WILLIAMS-CONFIDENTIAL |
|----------|----|----------------------------------|
| 16:06:40 | 2  | A.    That's true.               |

16:06:41  3          Q.    Then why isn't the appropriate

16:06:43  4    but for world here one in which the

16:06:47  5    representation simply wasn't made at all?

16:06:51  6          A.    Because my understanding is

16:06:53  7    representation, you know, this was part of an

16:06:56  8    ongoing discussion.  This is I'm taking as

16:06:59  9    given this is part of the allegation as I

16:07:01  10   understand it.

16:07:01  11          And those revelations, I don't

16:07:04  12   think that the Defendant had to make any

16:07:06  13   revelations in the actual world.  But they did.

16:07:09  14   And given that they did, the claim here those

16:07:13  15   revelations were fraudulent.

16:07:16  16          So I think, you know, the same

16:07:17  17   would be true in any matter.  You don't get to

16:07:21  18   reverse the whole transaction, if someone acts

16:07:23  19   bad within the transaction you just eliminate

16:07:25  20   the bad conduct.

16:07:25  21          Q.    But you're just not eliminating

16:07:29  22   the bad conduct; are you? What you're doing is

16:07:32  23   in your but for world you're substituting a

16:07:36  24   representation for that which is alleged to

16:07:39  25   have been fraudulent; isn't that correct?

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 286

|          |    |                                                        |
|----------|----|--------------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                       |
| 16:29:47 | 2  | in paragraph 22 is not important for my               |
| 16:29:50 | 3  | analysis is that my analysis is based simply on       |
| 16:29:54 | 4  | the opportunity to negotiate a better deal.           |
| 16:29:58 | 5  | It's not based on some inference about what the       |
| 16:30:03 | 6  | value of EMI is.                                      |
| 16:30:34 | 7  | Q.   I'm sorry, bear with me, I'm               |
| 16:30:35 | 8  | trying to be efficient.                               |
| 16:30:56 | 9  | Let me skip up, Dr. Williams, to          |
| 16:31:09 | 10 | paragraph 41.  In the second sentence of              |
| 16:31:24 | 11 | Fischel's paragraph 41 he states "In order to         |
| 16:31:28 | 12 | test whether financing for large leveraged            |
| 16:31:30 | 13 | buy-out transactions (LBOs) was available after       |
| 16:31:33 | 14 | May 21, 2007, I investigated whether other LBOs       |
| 16:31:36 | 15 | valued more than $1 billion were announced            |
| 16:31:39 | 16 | between May 21, 2007 and December 31, 2007.           |
| 16:31:44 | 17 | Exhibit I shows that 62 large LBOs were               |
| 16:31:48 | 18 | announced during this period, 51 of which were        |
| 16:31:50 | 19 | completed.  The Exhibit also shows that 12 of         |
| 16:31:52 | 20 | these transactions were larger than Terra             |
| 16:32:01 | 21 | Firma's purchase of EMI, 9 of which were              |
| 16:32:01 | 22 | completed."                                           |
| 16:32:01 | 23 | Do you see that?                          |
| 16:32:01 | 24 | A.   I do see that.                           |
| 16:32:05 | 25 | MR. GRAVANTE:   Just for the record       |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 287

|         |    |                                                    |
|---------|----|----------------------------------------------------|
|         | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                   |
| 16:32:05 | 2  | it's the third sentence.                          |
| 16:32:06 | 3  | MR. CARNEY:   Thank you.   Apologies.             |
| 16:32:10 | 4  | Q.    Do you recall reading that                  |
| 16:32:11 | 5  | portion of Dr. Fischel's report?                  |
| 16:32:17 | 6  | A.    I do.   You know, I interpret his           |
| 16:32:19 | 7  | data very differently.   I think his data         |
| 16:32:20 | 8  | actually proved my point to a large extent.       |
| 16:32:24 | 9  | The large transactions that he refers to, I       |
| 16:32:31 | 10 | believe, you know, there was no transaction as    |
| 16:32:32 | 11 | large as Terra Firma's after the first few days   |
| 16:32:35 | 12 | of July even though he is encompassing this       |
| 16:32:41 | 13 | total period.                                     |
| 16:32:41 | 14 | If you look at his own data there                 |
| 16:32:43 | 15 | is a dramatic decline in the availability of      |
| 16:32:46 | 16 | financing as indicated by the successful LBO      |
| 16:32:52 | 17 | activity during that period.                      |
| 16:32:53 | 18 | Q.    When did that decline occur                 |
| 16:32:55 | 19 | according to your interpretation of this? Turn    |
| 16:32:58 | 20 | to Exhibit I of Fischel, if that helps.           |
| 16:33:04 | 21 | MR. GRAVANTE:   I am going to object              |
| 16:33:05 | 22 | to the form of that question.                     |
| 16:33:37 | 23 | Q.    Let's take a look at Exhibit I.             |
| 16:33:41 | 24 | You testified, Dr. Williams, that his data        |
| 16:33:43 | 25 | actually proves your point to a large extent      |

Page 288

|          |    |                                                  |
|----------|----|--------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                 |
| 16:33:49 | 2  | insofar as the large transactions that he        |
| 16:33:54 | 3  | referred to in fact were not as large as Terra   |
| 16:33:57 | 4  | Firma's after the first few days of July.        |
| 16:34:02 | 5  | A.    Most of the big transactions were          |
| 16:34:03 | 6  | occurring before of July 4th, I believe.  Just   |
| 16:34:08 | 7  | based on his --                                  |
| 16:34:09 | 8  | Q.    Of 2007?                                    |
| 16:34:10 | 9  | A.    Of 2007 -- based on his                    |
| 16:34:13 | 10 | Exhibit I.                                        |
| 16:34:18 | 11 | Q.    Is it your opinion the number of           |
| 16:34:20 | 12 | large transactions declined after approximately  |
| 16:34:24 | 13 | July 4th, 2007?                                   |
| 16:34:28 | 14 | A.    I'm not rendering an opinion.              |
| 16:34:28 | 15 | This is his data.  I am just looking at his      |
| 16:34:30 | 16 | data.  I am just eye balling it here.            |
| 16:34:34 | 17 | Q.    Okay.  I'm just trying to                  |
| 16:34:35 | 18 | understand whatever critiques you have of        |
| 16:34:37 | 19 | Dr. Fischel's data.                              |
| 16:34:38 | 20 | You had mentioned first that the                 |
| 16:34:49 | 21 | transactions, as you read this data, the         |
| 16:34:49 | 22 | transactions that are larger than Terra Firma's  |
| 16:34:54 | 23 | all took place prior to early July 2007; is      |
| 16:34:58 | 24 | that correct?                                     |
| 16:34:58 | 25 | A.    Most of the big transactions are           |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 289

|          |    |                                                  |
|----------|----|--------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                 |
| 16:35:11 | 2  | early in the period.  If you just look at data   |
| 16:35:11 | 3  | here.                                            |
| 16:35:11 | 4  | Q.    By that you're looking in the far          |
| 16:35:11 | 5  | right-hand column?                               |
| 16:35:11 | 6  | A.    Right. They are all before July            |
| 16:35:11 | 7  | 4th.  Again, all I'm saying when you look at     |
| 16:35:16 | 8  | the data and you look at, also when you look at  |
| 16:35:31 | 9  | the timing of the transaction, most of these     |
| 16:35:33 | 10 | transactions are in the earlier period and       |
| 16:35:35 | 11 | there is a lot fewer in the later period.        |
| 16:35:37 | 12 | That's it.                                       |
| 16:35:44 | 13 | Q.    Do you have any other criticisms           |
| 16:35:45 | 14 | of Dr. Fischel's use of this analysis as set     |
| 16:35:51 | 15 | out in Exhibit I?                                |
| 16:35:53 | 16 | MR. GRAVANTE:  Objection to the                  |
| 16:36:06 | 17 | form.                                            |
| 16:36:06 | 18 | A.    I mean generally I think -- I              |
| 16:36:09 | 19 | disagree with the conclusion that is being       |
| 16:36:10 | 20 | drawn for it.  There might be a number of        |
| 16:36:13 | 21 | specific criticisms that come out of that.       |
| 16:36:15 | 22 | But generally the idea that                      |
| 16:36:17 | 23 | because a few LBOs transactions, some LBO        |
| 16:36:25 | 24 | transactions and no one is denying some LBO      |
| 16:36:28 | 25 | transactions are being financed, that the        |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 295

|          |    |                                                 |
|----------|----|-------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                |
| 16:42:37 | 2  | Q.    You don't know if they went back         |
| 16:42:39 | 3  | six months to January 1, 2007?                  |
| 16:42:41 | 4  | A.    I don't recall exactly.                   |
| 16:42:44 | 5  | Q.    Am I approximately right?                 |
| 16:42:45 | 6  | A.    Yeah.  I know we didn't go back           |
| 16:42:48 | 7  | five years or anything like that.               |
| 16:42:55 | 8  | MR. CARNEY:  They are going to                  |
| 16:42:56 | 9  | change the tape.  Why don't we take a           |
| 16:42:57 | 10 | short break.  I will go through my notes        |
| 16:42:59 | 11 | see whatever cleanup we have.  But I think      |
| 16:43:02 | 12 | I'm getting there.                              |
| 16:43:03 | 13 | VIDEOGRAPHER:  Here now marks the               |
| 16:43:07 | 14 | end of tape 5 of the deposition of              |
| 16:43:08 | 15 | Dr. Darrell L. Williams.  Time is 4:42          |
| 16:43:12 | 16 | p.m. We are now off the record.                 |
| 16:43:14 | 17 | (Recess taken.)                                 |
| 16:52:12 | 18 | VIDEOGRAPHER:  Here now marks the               |
| 16:52:30 | 19 | beginning of tape 6 of the deposition of        |
| 16:52:32 | 20 | Dr. Darrell L. Williams.  The time is 4:52      |
| 16:52:35 | 21 | p.m. We are back on the record.                 |
| 16:52:37 | 22 | EXAMINATION CONDUCTED BY MR. CARNEY:            |
| 16:52:37 | 23 | Q.    Just a couple more questions,             |
| 16:52:39 | 24 | Dr. Williams.  First let me just take you back  |
| 16:52:43 | 25 | to our discussion about the but for world.      |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 296

|           |    |                                                      |
|-----------|----|------------------------------------------------------|
|           | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                     |
| 16:52:46  | 2  | Hypothetically if the but for world you              |
| 16:52:48  | 3  | constructed was one in which there simply were       |
| 16:52:52  | 4  | no representations made one way or the other by      |
| 16:52:56  | 5  | Citigroup to Terra Firma, would that change          |
| 16:52:57  | 6  | your analysis?                                       |
| 16:53:01  | 7  | MR. GRAVANTE:  Objection to the                      |
| 16:53:08  | 8  | form.                                                |
| 16:53:08  | 9  | A.    I mean it would be something I                 |
| 16:53:09  | 10 | would want to think about.  But in my view it        |
| 16:53:17  | 11 | is not a proper but for world, so I haven't          |
| 16:53:20  | 12 | thought about that.                                  |
| 16:53:21  | 13 | Q.    Let me turn briefly to the                     |
| 16:53:22  | 14 | subject of damages.  Can you turn to paragraph       |
| 16:53:26  | 15 | 53 of your report.                                   |
| 16:53:32  | 16 | A.    Say it again.                                  |
| 16:53:33  | 17 | Q.    Paragraph 53.                                  |
| 16:53:34  | 18 | A.    Uh-huh.                                        |
| 16:53:37  | 19 | Q.    You are not offering an opinion               |
| 16:53:38  | 20 | on damages as you testified before; correct?         |
| 16:53:40  | 21 | A.    I'm not.                                       |
| 16:53:41  | 22 | Q.    And it never was your intent when             |
| 16:53:43  | 23 | you prepared this report to offer an opinion on      |
| 16:53:46  | 24 | damages?                                             |
| 16:53:47  | 25 | A.    That's correct.                               |

Page 297

```
          1           DARRELL L. WILLIAMS-CONFIDENTIAL
16:53:48  2           Q.    Is that correct?
16:53:48  3           A.    Yes.
16:53:49  4           Q.    Your summary of your opinions
16:53:53  5     don't include any reference to damages;
16:53:56  6     correct?
16:53:56  7           A.    Correct.  Nor does the
16:53:58  8     description of my assignment.
16:54:00  9           Q.    That is certainly true.  Why
16:54:03 10     then, sir, did you include a section on damages
16:54:05 11     here?
16:54:10 12           A.    Again, I'm just referencing in
16:54:13 13     this case what the damages expert did.  Because
16:54:18 14     there is all these various laws which I'm not
16:54:21 15     aware of particularly to do that reference
16:54:24 16     required more space.  But it's merely
16:54:27 17     referencing that information.
16:54:36 18           Q.    What did you do to assure
16:54:37 19     yourself what Ms. DeMario had done with respect
16:54:43 20     to a damages analysis was reliable?
16:54:48 21           A.    Again, I am not opining on
16:54:51 22     Ms. DeMario's analysis one way or the other.  I
16:54:54 23     am not proofing her analysis or confirming it
16:54:57 24     any more than I am anyone else's.
16:55:01 25                 I think it is perfectly clear I'm
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 298

|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL |
| 16:55:03 | 2  | saying if this is what you accept, then this is |
| 16:55:05 | 3  | what the number is. |
| 16:55:09 | 4  | Q.    You say in paragraph 53 "I rely |
| 16:55:12 | 5  | upon several computations by Ms. DeMario for |
| 16:55:14 | 6  | the following propositions." |
| 16:55:15 | 7  | Then you go on and essentially |
| 16:55:18 | 8  | summarize what Ms. DeMario did; is that fair? |
| 16:55:23 | 9  | A.    I don't think it is fair to say I |
| 16:55:25 | 10 | summarize what she did because I think her |
| 16:55:27 | 11 | report is fairly long.  All I do here is to |
| 16:55:30 | 12 | write out what the quantities are associated |
| 16:55:32 | 13 | with each one the of the specific damage |
| 16:55:35 | 14 | concepts. |
| 16:55:36 | 15 | Q.    Those quantities are based |
| 16:55:37 | 16 | entirely on Ms. DeMario's analysis; correct? |
| 16:55:40 | 17 | A.    I am not rendering any |
| 16:55:41 | 18 | independent analysis whatsoever with respect to |
| 16:55:44 | 19 | damages.  I am only referencing what was done. |
| 16:55:49 | 20 | Q.    You have done no independent work |
| 16:55:51 | 21 | to verify what Ms. DeMario has done is |
| 16:55:57 | 22 | reliable? |
| 16:55:58 | 23 | A.    I am being retained in this case |
| 16:55:59 | 24 | as an independent expert.  I was not retained |
| 16:56:01 | 25 | as part of Ms. DeMario's team.  It wasn't part |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 299

```
             1        DARRELL L. WILLIAMS-CONFIDENTIAL
16:56:04     2    of my assignment to support her, proof her work
16:56:07     3    or otherwise make a determination about the
16:56:12     4    contents of that report.
16:56:16     5        Q.    So, did you, prior to signing
16:56:19     6    your report and submitting it on June 14th see
16:56:24     7    any drafts of Ms. DeMario's report?
16:56:26     8        A.    No.
16:56:31     9        Q.    From what source did you
16:56:32    10    understand what it was that Ms. DeMario was
16:56:33    11    doing on or before June 14th?
16:56:37    12        A.    What do you mean by what she was
16:56:40    13    doing? Meaning that she --
16:56:44    14        Q.    Simple, you wrote two and a half
16:56:46    15    pages here in your report that was signed June
16:56:49    16    14th that describes Ms. DeMario's analysis and
16:56:58    17    the numbers that she arrived at.
16:57:00    18            My question is what's the source
16:57:02    19    of this information?
16:57:04    20            MR. GRAVANTE:  Objection to the
16:57:06    21        form.
16:57:06    22        A.    First of all, I completely
16:57:08    23    disagree with the characterization there is two
16:57:10    24    and a half reports of Ms .DeMario.
16:57:12    25            Ms. DeMario's contribution to
```

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 300

|          |    | DARRELL L. WILLIAMS-CONFIDENTIAL |
|----------|----|
| 16:57:14 | 2  | these two and a half reports is limited -- two |
| 16:57:16 | 3  | and a half pages is limited to six numbers in |
| 16:57:18 | 4  | those two -- however many numbers it is.  I |
| 16:57:21 | 5  | think maybe about six numbers in those two and |
| 16:57:24 | 6  | a half pages. |
| 16:57:24 | 7  | If you were to write out what |
| 16:57:26 | 8  | part of this comes from Ms. DeMario would all |
| 16:57:29 | 9  | fit probably on two lines of text. |
| 16:57:30 | 10 | That being said, this information |
| 16:57:37 | 11 | was, the numbers, right, the drafting, but the |
| 16:57:42 | 12 | numbers themselves were communicated to me by |
| 16:57:45 | 13 | my staff who got them from Ms. DeMario.  But I |
| 16:57:48 | 14 | was never in contact with her and never read |
| 16:57:50 | 15 | any drafts of her report. |
| 16:57:51 | 16 | Q.    Did your staff read any drafts of |
| 16:57:54 | 17 | her report? |
| 16:57:54 | 18 | A.    That, I don't know. |
| 16:57:57 | 19 | Q.    Do you know if your staff was in |
| 16:57:58 | 20 | contact with either Ms. DeMario or her staff |
| 16:58:02 | 21 | for the purpose of understanding her opinions |
| 16:58:04 | 22 | on damages? |
| 16:58:07 | 23 | A.    Someone had to communicate with |
| 16:58:08 | 24 | the staff in order to give them these six |
| 16:58:11 | 25 | numbers, however many that are in there.  I |

Page 301

|          |    |                                                 |
|----------|----|-------------------------------------------------|
|          | 1  | DARRELL L. WILLIAMS-CONFIDENTIAL                |
| 16:58:13 | 2  | presume there was a phone call or something     |
| 16:58:15 | 3  | where they said here are the numbers.           |
| 16:58:18 | 4  | That's the extent of my                         |
| 16:58:21 | 5  | knowledge.                                       |
| 16:58:21 | 6  | Q.   Is it your understanding that             |
| 16:58:22 | 7  | your staff did not undertake any independent    |
| 16:58:28 | 8  | analysis to ascertain whether Ms. DeMario's     |
| 16:58:32 | 9  | analysis was reliable?                          |
| 16:58:34 | 10 | MR. GRAVANTE:   Objection to the               |
| 16:58:34 | 11 | form.   Asked and answered.                     |
| 16:58:40 | 12 | Q.   I just want to make clear your            |
| 16:58:41 | 13 | staff didn't do it?                             |
| 16:58:43 | 14 | A.   My staff wasn't involved in               |
| 16:58:45 | 15 | computing any of these damages.   Right.        |
| 16:58:53 | 16 | Q.   So you don't have a view one way          |
| 16:58:55 | 17 | or the other whether Ms. DeMario's calculations |
| 16:58:58 | 18 | are correct; fair?                              |
| 16:59:00 | 19 | MR. GRAVANTE:   Objection to the               |
| 16:59:01 | 20 | form.                                            |
| 16:59:01 | 21 | A.   I mean I have no reason to                |
| 16:59:03 | 22 | disbelieve what she's done.  As you asked       |
| 16:59:06 | 23 | earlier whether or not I have been engaged in   |
| 16:59:08 | 24 | the process of evaluating what she's done, I    |
| 16:59:11 | 25 | have not done that.  I wasn't retained for that |

CONFIDENTIAL
Williams, Darrell - 7/21/2010

Page 302

             1           DARRELL L. WILLIAMS-CONFIDENTIAL
16:59:13     2      purpose.
16:59:13     3           Q.    I think I have no further
16:59:23     4      questions.  Thank you for your time.
16:59:25     5           A.    Thank you very much.  I
16:59:26     6      appreciate it.
16:59:27     7              MR. GRAVANTE:   I have no questions
16:59:28     8          at this time.
16:59:29     9              VIDEOGRAPHER:  Here now marks the
16:59:33    10          end of tape 6 in the deposition of
16:59:36    11          Dr. Darrell L. Williams.  The time is
16:59:38    12          4:59 p.m. We are now off the record.
16:59:38    13      (Time Noted:  4:59 p.m.)
            14          _____
            15          DARRELL L. WILLIAMS, Ph.D.
            16
            17   Subscribed and sworn to before me
            18   this _____ day of _____, 2010.
            19
            20   _____
            21
            22
            23
            24
            25

CONFIDENTIAL
Williams, Darrell - 7/21/2010

```
 1             DARRELL L. WILLIAMS-CONFIDENTIAL
 2    STATE OF NEW YORK          )      Pg__of__Pgs
 3                                ss:
 4    COUNTY OF NEW YORK          )
 5         I wish to make the following changes, for
 6    the following reasons:
 7    PAGE LINE
 8    ____ ____    CHANGE:  _____
 9                 REASON:  _____
10    ____ ____    CHANGE:  _____
11                 REASON:  _____
12    ____ ____    CHANGE:  _____
13                 REASON:  _____
14    ____ ____    CHANGE:  _____
15                 REASON:  _____
16    ____ ____    CHANGE:  _____
17                 REASON:  _____
18    ____ ____    CHANGE:  _____
19                 REASON:  _____
20    ____ ____    CHANGE:  _____
21                 REASON:  _____
22    ____ ____    CHANGE:  _____
23                 REASON:  _____
24    ____ ____    CHANGE:  _____
25                 REASON:  _____
```