UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 09 CIV 10459 (JSR) (AJP)

TERRA FIRMA INVESTMENTS (GP) 2 LIMITED
TERRA FIRMA INVESTMENTS (GP) 3 LIMITED

__Plaintiffs__

Against

CITIGROUP INC.
CITIBANK, N.A.
CITIGROUP GLOBAL MARKETS LIMITED

__Defendants__

---

## THIRD REPORT PURSUANT TO RULE 44.1 OF EWAN MCQUATER QC: 26 NOVEMBER 2013

---

### (A)  Introduction

1. I am a barrister at the Bar of England and Wales, practising from chambers at 3 Verulam Buildings in Gray's Inn, London. I was called to the Bar in 1985 and was appointed as Queen's Counsel in 2003.

2. I have previously made two reports in this litigation, dated 30 July 2010 and 3 September 2010, which contain my expert opinion on aspects of English law relevant to the litigation.

3. In this report:

    (1) I explain in general terms the function of claim forms in English civil proceedings, and I describe briefly three claim forms which have been issued in the Manchester District registry of the English High Court commencing proceedings which are closely related to these New York proceedings. See section (B) below.

(2) I address the question of whether, in principle, the surviving claim for fraudulent misrepresentation currently being advanced in these New York proceedings could be brought in the English High Court, and I describe some related matters of English procedure. See sections (C) and (D) below.

## (B) Claim Forms

4. The claim form is the main form of originating process in civil proceedings in the English courts. Under rule 7.2(1) of the Civil Procedure Rules ("CPR"),[1] proceedings are started when the court issues a claim form at the request of the claimant.

5. The date of issue of proceedings started by a claim form is the date entered on the claim form by the court: CPR, rule 7.2(2). However, where a claim form is issued at the end of a limitation period, the proceedings are treated for limitation purposes as having been brought on the date (if earlier) when the claimant's request for the issue of the claim form, together with the court fee, were delivered to the court office during office hours: see paragraph 5.1 of the Practice Direction to Part 7 of the CPR, and the decision of the Court of Appeal in St Helens Metropolitan Borough Council v Barnes [2006] EWCA Civ 1372. These steps must be taken before the expiry of the limitation period relevant to the claim, otherwise the claim will be time-barred.

6. A claimant is generally under no obligation to serve proceedings on the defendant immediately. Where a claim form is to be served within the jurisdiction, it is valid for service for four months from the date of issue: CPR, rule 7.5(1). Where a claim form is to be served out of the jurisdiction, it is valid for service for six months from the date of issue: CPR, rule 7.5(2).

7. A claimant may apply for an extension of time for serving a claim form. The general rule is that the application must be made within the period of validity of the claim form: CPR, rule 7.6(2). It has been said that the regime relating to extension is a strict one and that a good reason for extension will generally be required, particularly where granting an extension may prejudice a limitation defence: Cecil v Bayat [2011] 1 WLR 3086 at [90], [108] (Court of Appeal). An extension of time may be granted if the application is made outside the period of validity of the claim form, but only in the limited circumstances

---

[1] Subject to certain limited exceptions (identified in rule 2.1(2)), the Civil Procedure Rules govern procedure in the county courts, the High Court and the Civil Division of the Court of Appeal.

identified in CPR, rule 7.6(3).[2] If a claim form is not served within the period of its validity (including any extension, where granted), there can be no effective service of process.

8. I have been provided with copies of three claim forms issued in the Manchester District Registry of the High Court, dated 12 August 2013 (claim number 3MA40113), 27 August 2013 (claim number 3MA40121), and 12 September 2013 (claim number 3MA40129). I understand that these claim forms have been referred to as the First, Second and Third Manchester Claim Forms, and I will use the same terms. The claim forms in all of the Manchester actions have been amended since they were first issued. I understand that the Second Manchester Claim Form has now been served.

9. As in these New York proceedings, the First, Second and Third Manchester Claim Forms are concerned with misrepresentations alleged to have been made to Mr Hands during Terra Firma's acquisition of EMI.

10. The First Manchester Claim Form is brought by the two Plaintiffs in these New York proceedings, and by the seven limited partnerships on behalf of whom Plaintiffs claim in these proceedings, in respect of representations which are alleged to have been made to Mr Hands on 8 and 9 August 2007 by Mr Michael Klein, Mr Chad Leat and/or Mr Charles Prince and which are said to have induced the claimants to invest £205,000,000 in Maltby Acquisitions Limited, the value of which is said to have been entirely lost. It is alleged that these statements "were made negligently, and/or in breach of a duty of care, and/or constituted negligent misstatements; and/or give rise to liability under section 2(1) of the Misrepresentation Act 1967". Section 2(1) of the Misrepresentation Act 1967 creates a statutory action for damages where a person has been induced to enter into a contract as a result of a misrepresentation made to him by another party to the contract where the representor had no reasonable grounds for believing that his statement was true at the time the contract was made. None of these causes of action involves any allegation of fraud; there is no claim in the tort of deceit in the First Manchester Claim Form.

11. The Second Manchester Claim Form is also an action by the two Plaintiffs in these New York proceedings and by the seven limited partnerships on behalf of whom Plaintiffs claim in these proceedings. The claims are based on

---

[2] Those are where (a) the court itself has failed to serve the claim form, or (b) the claimant has taken all reasonable steps to serve within the claim form's period of validity but has been unable to do so, and (c) in either case the claimant has acted promptly in making the application.

alleged misrepresentations which are said to have been made to Mr Hands: (1) in May 2007 by Mr Michael Klein, (2) in June/July 2007 by Mr Chad Leat and Mr Klein, and (3) on 8 and 9 August by Mr Klein, Mr Leat and/or Mr Charles Prince (the same alleged misrepresentations which are the focus of the First Manchester Claim Form). It is said that these misrepresentations induced the claimants to invest €2,667,532,174 and £205,000,000 in Maltby Acquisitions Limited and that the value of the investments has been lost. The claimants claim "damages for deceit; and/or negligence; and/or breach of duty of care; and/or negligent misstatement; and/or pursuant to section 2(1) of the Misrepresentation Act 1967".

12.  The Third Manchester Claim Form is a claim by Mr Hands personally and by certain companies of which he is the ultimate beneficial owner, two of which are the parent companies of Plaintiffs in these New York proceedings (see paragraph 2 of the claim form). The claims asserted are based on the same alleged misrepresentations as are relied on in the First and Second Manchester Claim Forms, and on the alleged misrepresentations which are said to have been made to Mr Hands in May 2007 by Mr Wormsley which are the focus of the New York proceedings. The alleged misrepresentations are said to have caused 'the Terra Firma Funds' (as defined in paragraph 2 of the claim form) to make their investments of €2,667,532,174 and £205,000,000 in Maltby Acquisitions Limited, and the claimants' claim is made in respect of unspecified 'separate and additional' loss which they say they have suffered as a consequence of 'the Terra Firma Funds' making those investments. The claimants claim "damages for deceit; and/or negligence; and/or breach of duty of care; and/or negligent misstatement; and/or pursuant to section 2(1) of the Misrepresentation Act 1967".

13.  Like the cause of action currently pursued by Terra Firma in New York, the Second and Third Manchester Claim Forms include claims in deceit. However the causes of action alleged in the First, Second and Third Manchester Claim Forms are otherwise different in nature from the cause of action Terra Firma is currently pursuing in New York, albeit they are closely related on the facts.

14.  These claims have been issued in the Manchester District Registry (in the north west of England, approximately 180 miles from London) rather than in London where they might more naturally be expected to have been issued given that: (1) the Claimants' solicitors, Mishcon de Reya, many of the Claimants, the Defendants (or, in the case of Citibank NA, the branch principally involved in the events in question) are all located in London; and

4

(2) the Commercial Court in London is the obvious court to hear the claims. As far as I can see, the proceedings have no connection with Manchester.

15. It is a straightforward matter to establish whether a claim has been issued in the High Court in London.[3] By contrast, where a claim form is issued in one of the District Registries of the High Court located across England and Wales, a defendant is less likely to discover it until the claimant tells him about it. There is no central database recording the claims issued in the District Registries, and searches for claims must be made by enquiries in person or by telephone to the relevant court. As a result, a claimant who does not wish the existence of a claim form to be discovered (for example, until service of proceedings), may choose to issue the claim form in one of the District Registries, where it is more difficult for a defendant (or anyone else) to discover it.

### (C) Trial of Terra Firma's Claim in England

16. Some of the matters I address in this section were also addressed in paragraphs 5-14 of the Declaration of Adrian Briggs dated 20 January 2010 in support of Defendants' Motion to Dismiss, and in paragraphs 38-44 of his Second Declaration, dated 11 February 2010. I agree with the opinions expressed there by Professor Briggs.

17. The surviving claim for fraudulent misrepresentation in these New York proceedings is the counterpart of the English tort of deceit, which I have described in my previous reports. There is no doubt that this claim could be formulated and brought under English domestic law: indeed the amended claim in the Third Manchester Claim Form seeks (in part) to do precisely that.

18. The English court has jurisdiction to entertain a claim against a person who is present in England and duly served there with process – including both English corporations and foreign corporations carrying on business in England. The English court in addition has detailed rules as to when a claim form may be served out of the jurisdiction. The English court also has jurisdiction over a defendant, wherever situated, who submits to the jurisdiction in respect of a claim.

---

[3] I understand that the means of searching the registers of claims in the High Court in London are explained in a Declaration of Mr Roger Best, and I will not duplicate his explanation.

19. If proceedings were brought in England in respect of the claim currently made in New York, it would be tried in the High Court. The natural court for the claim would be the Commercial Court, which is a specialist court within the Queen's Bench Division of the High Court, established for the purposes of dealing with complex cases arising out of national and international business disputes. The judges of the Commercial Court are highly experienced in trying cases of this kind and the claim is of course governed by English law. The case would be tried by a judge sitting alone, without a jury.

20. If the claim were now brought in the Commercial Court, I would expect that a number of procedural efficiencies could be achieved on the basis that evidence gathering, pleadings and discovery have already taken place in the New York proceedings and witnesses have already been deposed. If commenced and pursued promptly, the claim should reach trial in late 2014 or early 2015.

21. The English courts have well established procedures for case management, for the disclosure of documentary evidence, for the efficient taking of evidence, and for the submission of legal argument. Where a person within England and Wales has relevant evidence to give or is in possession of relevant documents, his attendance may be compelled by means of a witness summons requiring him to attend to provide oral evidence or to produce specified documents (or both). The procedure is set out in Part 34 of the CPR. Where a witness has failed to appear as required by a witness summons, the High Court may issue a bench warrant for his arrest to secure his attendance. Failure to comply with a properly served witness summons constitutes a contempt of court.

22. The norm is for witnesses to give evidence in person but, on the application of a party, the court may allow a witness to give evidence through a video link or by other forms of communications technology. See: CPR, rule 32.3 and section H.3 of the Admiralty and Commercial Courts Guide.

23. A judgment given against defendants in English proceedings is enforceable against the assets of the defendants in England.

(D)   **Parallel Proceedings**

24. I have been asked to explain briefly the approach of the English courts where multiple parallel claims are made in respect of related matters. There is a strong policy in England in favour of resolving related disputes in a manner which avoids a multiplicity of proceedings, where possible.

25. The policy is expressed in section 49(2) of the Senior Courts Act 1981, a key statute governing the administration of justice in the senior courts of England and Wales. Section 49(2) provides (in part):

> "Every court ... subject to the provisions of this or any other Act, shall so exercise its jurisdiction in every cause or matter before it as to secure that, as far as possible, all matters in dispute between the parties are completely and finally determined, and all multiplicity of legal proceedings with respect to any of those matters is avoided."

26. The English courts have a wide range of case management powers to enable this policy to be enforced, including: the transfer of proceedings from one court to another; the consolidation of proceedings; the trial of two or more claims on the same occasion; the addition and substitution of parties; and the joinder of claims, counterclaims and other related claims.

27. If proceedings were brought in the English Commercial Court in respect of the claim which is currently made in New York, the English court would most likely exercise its powers to direct that that claim should be managed and heard together with the causes of action set out in the three Manchester Claim Forms, and the claims in the Manchester Claim Forms would be transferred to the Commercial Court in London for that purpose. I should make it clear that in saying this I should not be taken as expressing any view on whether any of the Manchester Claim Forms is properly formulated, or that the losses they allege would be recoverable, or that the claims are otherwise sustainable. I intend only to explain the approach the English court is likely to take to managing these closely related claims on the assumption that the Manchester Claim Forms can be, and are, pursued.

Dated: 26.11.13

EWAN MCQUATER QC